59 CCPA

**Application of William P. COKER et al.**

**Patent Appeal No. 8674.**

United States Court of Customs
and Patent Appeals.

Aug. 17, 1972.

Bernd W. Sandt, Midland, Mich., Arthur R. Whale, Kalamazoo, Mich., attorneys of record, for appellant.

S. Wm. Cochran, Washington, D. C., for the Commissioner of Patents. Fred E. McKelvey, Washington, D. C., of counsel.

Before RICH, Acting Chief Judge, ALMOND, BALDWIN and LANE, Judges, and ROSENSTEIN, Judge, United States Customs Court, sitting by designation.

BALDWIN, Judge.

This appeal is from the decision of the Patent Office Board of Appeals, adhered to on reconsideration, sustaining the rejection of claims 1–3 of appellants' application [1] under 35 U.S.C. § 102(a). Appeal of the board's decision as to two other claims has been abandoned by appellants.

*The Invention*

The claims are drawn to (1–aziridinyl) alkyl esters of polycarboxylic acids, which appellants disclose as being useful as inhibitors which retard the reaction of aluminum with various degreasing solvents, and as curing agents for acid terminated polymers. Appellants' compounds are prepared by a transesterification reaction between a polycarboxylic acid ester and a (1–aziridinyl) alcohol in the presence of an alkali metal alkoxide catalyst. The reaction conditions are

---

[1]. Serial No. 583,979, filed October 3, 1966, which is a continuation-in-part of Application Serial No. 309,865, filed September 18, 1963.

listed in appellants' specification as generally being a pressure range of from about 50 mm. Hg to atmospheric pressure; a temperature range of from about 25° to 110°C; and, preferably, an excess of the aziridinyl alcohol. As appellants point out in their brief, the following reaction between dimethyl succinate (II) and (1–aziridinyl) ethanol (III) to form di[2–(1–aziridinyl ethyl] succinate (IV) and methanol (V), is illustrative:

$$
\begin{array}{c}
\underset{\displaystyle CH_2 - \overset{\displaystyle \overset{O}{\|}}{C} - OCH_3}{\mid} \\
CH_2 - \overset{\overset{O}{\|}}{C} - OCH_3
\end{array}
+ \; 2HO - CH_2 - CH_2 - N\big\langle{}^{CH_2}_{CH_2} \xrightarrow{\text{Me-O-alk}}
$$

II                III

$$
\begin{array}{c}
CH_2 - \overset{\overset{O}{\|}}{C} - O - CH_2 - CH_2 - N\big\langle{}^{CH_2}_{CH_2} \\
\mid \\
CH_2 - \overset{\overset{O}{\|}}{C} - O - CH_2 - CH_2 - N\big\langle{}^{CH_2}_{CH_2}
\end{array}
+ \; 2CH_3OH \uparrow
$$

IV                V

[A6217]

The byproduct methanol is preferably distilled out of the reaction mixture as it is formed, in order to drive the reaction to completion. The preferred catalysts are those in which the alkoxide radical is derived from the same aziridinyl alcohol as is reacted with the polycarboxylic acid ester.

Claim 1 reads:

A compound of the formula

$$
(A) - \left[ \overset{\overset{O}{\|}}{C} - O - \underset{H}{\overset{R_0}{\underset{|}{C}}} - \underset{H}{\overset{R_0}{\underset{|}{C}}} - N\big\langle{}^{\overset{R_0}{\underset{|}{C}} - R_0}_{\underset{|}{\overset{|}{C}} - R_0}{}_{R_0} \right]_n
$$

[A6218]

wherein:

(a)  n is an integer from 2 to 4,

(b)  A is a hydrocarbyl group of from 2 to 10 carbon atoms of valence n, and

(c)  each $R_0$ is, independently, hydrogen or a lower alkyl group.

Claim 2 recites that n is 2, and claim 3 recites that A is an alkylene or arylene group.

### The Rejection

The appealed claims stand rejected under 35 U.S.C. § 102(a) as anticipated by

**1346**

a Tsou et al (Tsou) reference.[2] Tsou prepared a large number of aziridine (also called ethylenamine) derivatives and evaluated many of them as possible cancer chemotherapeutic agents. Tsou apparently theorized that the aziridinyl derivatives might be useful as chemotherapeutic agents on the basis of a "known difference in esterase activity in normal and neoplastic tissues." After discussing the preparation of a number of aziridine derivatives, the reference states:

> Another type [sic. Other types?] of bifunctional ethylenimine compounds that can be hydrolyzed by the esterase are dibasic acid esters of (1–aziridinyl) methanol * * * and β–(1–aziridinyl) ethanol * * *. Only the lower members of the aliphatic dicarboxylic acids are of interest because it is generally accepted that separation of the two alkylating groups over too long a chain is undesirable * * *. * * * Because of the instability of the (1–aziridinyl) methanol, only (1–aziridinal) ethanol was used. Model compounds such as β–(1–aziridinyl) ethyl acetate * * *, propionate * * *, and butyrate * * * were prepared. However, the preparation of the malonate and *succinate* esters *has not been successful.* [Emphasis ours.]

Both parties agree that the above language identifies di[2–(1–aziridinyl) ethyl] succinate, which compound is within the scope of all of the claims presently on appeal.

Tsou prepared the acetate, propionate and butyrate "model" compounds via a transesterification reaction between β–(1–aziridinyl) ethanol and ethyl acetate, methyl propionate and methyl n–butyrate, respectively. The reactants were mixed with sodium methoxide and heated at 80–90°C. The alcohols resulting from the transesterification were removed by distillation.

The examiner noted that Tsou's method of making the model compounds (which the examiner termed "alcoholysis") corresponds to the process described in appellants' specification for making the claimed compounds. The examiner considered that, in spite of Tsou's reported lack of success in making the succinate ester, the mere naming of the compound would suggest several ways of making·it, including transesterification, to one of ordinary skill in the art.

The board agreed with the examiner. It considered that Tsou's teaching of the desirability of producing the aziridine derivative as possible cancer chemotherapeutics provided a "reason for making" the compounds therein described. With regard to Tsou's unsuccessful attempt to prepare the malonate and succinate esters the board stated:

> * * * We believe it to be apparent that the unsuccessful process must have been that employed in making the "Model compounds," such as the acetate, propionate, and butyrate actually produced. The very term "model" suggests a pattern to be followed for other examples. * * *

The board concluded:

> There can be no question that Tsou et al., although they were unsuccessful in their preparation, describe, by name, from which the organic chemist visualizes the chemical formula, the malonic and succinic acid esters of aziridinyl ethanol. The desired utility and desirability of producing such compounds is set forth. Under such conditions we agree with the Examiner that the name alone is sufficient to place in possession of the organic chemist of ordinary skill these two

2. "Synthesis of Possible Cancer Chemotherapeutic Compounds Based on Enzyme Approach. IV. Aziridine Derivatives," J.Med.Chem., vol. 6, pp. 435–39 (1963).

compounds which fully meet the terms of claims 1, 2, and 3.

Although the process employed in Tsou et al. was unsuccessful, for reasons not given, the art is well aware of numerous methods for forming comparatively simple esters of the type described in Tsou et al. In page 6 of the Examiner's Answer, without denial by appellants, the Examiner has indicated numerous other known methods for forming compounds of this type which would be expected to produce the desired products. It is to be noted that such processes include not only normal direct esterifications of an alcohol but also an example of the very well-known addition of ethylene imine ("aziridine") to double bonds. The application of this known reaction to divinyl succinate or malonate would be expected, as pointed out by the Examiner, to produce the compounds described by name and desired in Tsou et al.

In view of the expected knowledge of the organic chemist, it is our opinion that Tsou et al. do, in fact, represent a disclosure enabling one skilled in this art to produce the malonate and succinate esters therein described but not successfully prepared. [Citing In re Hoeksema, 379 F.2d 1007, 54 CCPA 1618 (1967).]

Appellants filed a petition for reconsideration, in which they pointed out an obvious error in the board's statement that claims 1–3 would be met by the malonate ester. Since the "A" moiety in the claims must contain at least 2 carbon atoms, the malonate ester would not be covered by the claims. The board apparently overlooked this error in its decision on the petition for reconsideration. Appellants disagreed with the board's conclusion that it was the transesterification reaction which was unsuccessful in producing the succinate ester. Appellants also argued that the board was merely speculating that one of the "numerous other known methods" would successfully produce the succinate ester. Appellants stated:

In the Board's speculation on allegedly obvious methods that *could* be used (page 6) it included several *obviously* unsuitable ones:

(a) Direct esterification requires an *acid* reactant and an *acid* catalyst. Aziridine rings are *notoriously unstable* in the presence of acid!

(b) The addition of aziridine to the olefinic double bonds of divinyl succinate or malonate would *obviously* not be feasible. A non-activated double bond, such as in a vinyl ester, is *notoriously inert*. Note, for instance, that Tsou, page 438, added aziridine to *vinyl* acrylate to produce *vinyl* β–(1–aziridinyl)–propionate. *The vinyl group was untouched.* Moreover, he added aziridine to allyl acrylate to make allyl β–(1–aziridinyl)–propionate. Even the allyl double bond was inert.

The board retained its previous position, stating that "there is no evidence in this record that would lead a skilled organic chemist to assume that the application of at least some of the numerous known esterification processes or other preparative methods for the formation of the dibasic acid esters of aziridinyl ethanol identified in Tsou et al. would not be operative. Compare in re Maloney [56 CCPA 1218, 411 F.2d 1321, 162 USPQ 98 (1969)]."

### Opinion

Whatever might have been the reason Tsou considered the attempted preparation of the succinate ester unsuccessful and regardless of what method was *actually* used in that attempt, we think that the clear import of the Tsou reference is that transesterification was used in the attempt and that the reference's authors were unable to make transesterification work. The Tsou reference itself fully·establishes the competence of its authors in the art. Thus the only

evidence in this case regarding prior knowledge of a process by which the compound named in the Tsou reference might be prepared, indicates that the compound could not be made. Unlike the situation in the *Maloney* case relied on by the board, neither the examiner nor the board cited any authority which would support the operability of the various alternative preparation methods postulated for the production of the succinate ester.[3] Moreover, we find that appellants' remarks quoted above raise serious questions concerning the two alternate methods specifically mentioned by the board, and those remarks have not been effectively challenged by the Patent Office.

Since it has not been established that methods for making the compound named in the Tsou reference were known or were described in that reference, it cannot be said that the reference would have placed the public in possession of the invention. In re Wilder, 429 F.2d 447, 57 CCPA 1314 (1970); In re Hoeksema, 399 F.2d 269, 55 CCPA 1493 (1968); In re Sheppard, 339 F.2d 238, 52 CCPA 859 (1964). The Tsou reference is therefore *not* an anticipation of the subject matter of the appealed claims. In re Brown, 329 F.2d 1006, 51 CCPA 1254 (1964). The solicitor attempts to distinguish the *Brown* and *Sheppard* cases on the basis that in those cases the method disclosed by the reference was not suitable for making the disclosed compounds, while in the present case appellants succeeded with the very method disclosed (as inoperable) by the Tsou reference. In our view this is no basis for distinction at all. The Tsou reference not only does not place the public in possession of the invention, it effectively directs the public *away* from the only method established in this record to be operable to make the

claimed compound. Such a teaching is the antithesis of anticipation.

The decision of the board in reversed.

Reversed.

59 CCPA

---

3. The Solicitor urges us to take judicial notice of a section in Kirk-Othmer, *Encyclopedia of Chemical Technology*, which allegedly shows that the transesterification reaction is well known. We find no occasion to consider that reference, however, since it could add but little to the Tsou reference, which clearly discloses that reaction.