**Application of Carlos M. SAMOUR.**

**Appeal No. 77–585.**

United States Court of Customs
and Patent Appeals.

Feb. 23, 1978.
Rehearing Denied April 13, 1978.

Morton S. Simon, New York City, Robert H. Berdo, Washington, D. C., attorneys of record, for appellant.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents, Fred E. McKelvey, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, and RICH, BALDWIN, LANE and MILLER, Associate Judges.

MILLER, Judge.

This appeal is from the Patent and Trademark Office ("PTO") Board of Appeals ("board") affirming the rejection of claims 1, 3, and 4, in application serial No. 888,943, filed December 29, 1969, for "Alkoxymethyl and Benzyloxymethyl Phenobarbital and Diphenylhydantoin Compounds and Therapeutic Compositions Containing Same." We affirm.

### The Invention

The compounds defined in the appealed claims are phenobarbital derivatives which are useful as anticonvulsant agents for

treating convulsions and seizures in warm-blooded animals. Although phenobarbitals have long been known to be useful as anti-convulsant agents, they exhibit hypnotic activity. By contrast, the claimed compounds are substantially free from hypnotic activity. The claims on appeal are:

1. A compound having the structure wherein R and $R_1$ are phenyl and ethyl respectively, or R and $R_1$ are individually alkyl or alkenyl each having 2 to 5 carbon atoms or cycloalkenyl having 5 to 7 carbon atoms, and wherein $R_2$ and $R_3$ are individually alkyl having 1 to 12 carbon atoms or benzyl.

3. A compound as claimed in claim 1 which is 1,3-dialkoxymethyl-5-ethyl-5-phenyl barbituric acid.

4. A compound as claimed in claim 3 which is 1,3-dimethoxymethyl-5-ethyl-5-phenyl barbituric acid.

Each of these claims reads on the compound 1,3-dimethoxymethyl-5-ethyl-5-phenyl barbituric acid, also known as 1,3-dimethoxymethyl phenobarbital (hereinafter "DMMP"), which has the formula:

## Proceedings Below

The original decision of the board affirmed the examiner's final rejection of the claims under 35 U.S.C. § 102(b) as anticipated by Doran,[1] which discloses the structural formula of DMMP in a table of twenty-two barbituric acids, but does not disclose a method for its preparation.[2] Doran cites, as its source reference, a War Department microfilm [3] which contains the structural formula of DMMP and the notation"o.W." An uncontested declaration of Dr. Maxwell Gordon, a vice president at Bristol Laboratories, shows that the abbreviation "o.W." would have been interpreted by a skilled German chemist during the relevant period of time to mean "without effect" or "without activity."

Responding to appellant's argument that Doran "is non-enabling," the examiner had cited Henze,[4] which discloses a method for preparing mono-substituted phenobarbitals, e. g., 1-hydroxyethyl phenobarbital. The board agreed that "Henze provides a legally sufficient teaching of how to synthesize the compound of Doran."

Following remand from this court, the board was "not persuaded of any error" in its original decision.[5] However, it did dis-

---

**1.** Doran, 4 *Medicinal Chemistry* 187, Table No. 170 (1959).

**2.** This original decision, dated May 29, 1975, remained substantially unchanged upon reconsideration. Thereafter, an appeal was filed to this court; however, on appellant's motion the case was remanded for further consideration of the claims in view of additional references set forth in appellant's motion, namely: (1) a method disclosed by Fujinaga and Negishi in *Chemical Abstracts* 24769c (1960) (hereinafter "Fujinaga"); and (2) a method disclosed by Henze et al. in "N-Substituted Derivatives of Phenobarbital," 63 *J.Am.Chem.Soc.* 3360 (1941) (hereinafter "Henze et al.").

**3.** Frame "E 3230 Taub 263," microfilm No. 1720, War Department Army Medical Library, I. G. Farbenindustrie Plant, Elberfeld, Germany.

**4.** Patent No. 2,344,459, issued March 14, 1944.

**5.** The decision (following remand), dated July 22, 1976, was adhered to on reconsideration, dated March 15, 1977.

cuss the method disclosed by Fujinaga in which a phenobarbital derivative having both nitrogen atoms substituted with a hydroxyethylene group (1,3-bishydroxyethyl phenobarbital) is obtained; also, the method disclosed by Henze et al. for preparing 1,3-diacetonyl, 1,3-diphenacyl, and 1,3-dipropionyl-phenobarbital. The board noted that—

> except for the authors' recognition that a disubstituted compound was present in the reaction product, the syntheses of the publications [Fujinaga and Henze et al.] are the same as the process shown in the Henze patent, upon which the examiner relied in his rejection of the claims.

## OPINION

Appellant's position is that, where resort must be had to a second reference for a suggestion of how to make a compound, a rejection under section 102 is proper only if it can be shown that one skilled in the art would have had an incentive to make the compound. Further—

> that where a reference fails to disclose how to make a depicted bare chemical structure, fails to disclose any utility whatsoever therefor, and actually states that the compound is inactive, as in the microfilm reference, a rejection under 35 U.S.C. 102 is not well founded since one skilled in the art would have no reason to make the compound by the Chem. Abstracts [Fujinaga] method.

Appellant adds that the incentive to make the compound must be shown by a disclosure in the reference of some "practical utility."

The Solicitor's position appears to be that, since appellant is claiming the compound *per se* and not a use therefor, the claims were anticipated by the disclosure (more than one year prior to appellant's filing date) of the structural formula of DMMP in Doran and the further disclosure of a method of preparing DMMP (e. g., Fujinaga) which would have been known to one of ordinary skill in the art.

■ Doran, a printed publication which discloses every material element of the claimed subject matter, would constitute a bar under 35 U.S.C. § 102(b) to appellant's right to a patent if, more than one year prior to appellant's filing date, it placed DMMP "in possession of the public." *In re Coker*, 463 F.2d 1344, 59 CCPA 1185, 175 USPQ 26 (1972); *In re Wilder*, 429 F.2d 447, 57 CCPA 1314, 166 USPQ 545 (1970); *In re Brown*, 329 F.2d 1006, 51 CCPA 1254, 141 USPQ 245 (1964); *In re LeGrice*, 301 F.2d 929, 49 CCPA 1124, 133 USPQ 365 (1962). Whether claimed subject matter was in possession of the public depends on whether a method of preparing the claimed subject matter would have been known by, or would have been obvious to, one of ordinary skill in the pertinent art. *In re Brown, supra*, 329 F.2d at 1011, 51 CCPA at 1260, 141 USPQ at 249; see *In re Coker, supra; In re Hoeksema*, 399 F.2d 269, 55 CCPA 1493, 158 USPQ 596 (1968). Here, the mere recitation in Doran of the structural formula of DMMP would clearly not have been sufficient to place DMMP in possession of the public. *In re Wiggins*, 488 F.2d 538, 179 USPQ 421 (Cust. & Pat.App.1973); *In re Brown, supra*, 329 F.2d at 1010–11, 51 CCPA at 1259, 141 USPQ at 248–49. However, the disclosure in Doran must be considered together with the knowledge of one of ordinary skill in the pertinent art. *In re Collins*, 462 F.2d 538, 59 CCPA 1170, 174 USPQ 333 (1972); *In re LeGrice, supra*, 301 F.2d at 936, 49 CCPA at 1134, 133 USPQ at 372.

■ In this appeal, additional references (Henze, Fujinaga, and Henze et al.) are relied on solely as evidence that, more than one year prior to appellant's filing date, a method of preparing the claimed subject matter (DMMP) would have been known by, or would have been obvious to, one of ordinary skill in the art. Therefore, the key issue before us is whether the PTO, in making a rejection under 35 U.S.C. § 102(b) on a single prior art reference that discloses every material element of the claimed subject matter, can properly rely on additional references for such purpose. We

hold in the affirmative.[6] To do otherwise would sanction the granting of patents for inventions which do not meet the basic requirement of novelty.[7]

■ Although the board's opinion following remand is somewhat ambiguous, it appears that the board merely considered Fujinaga and Henze et al. to be the equivalent of the Henze patent and did not change the original rejection by the examiner for anticipation by Doran, citing the Henze patent for its teaching of a method of preparing the compound disclosed by Doran. Also, we note appellant's admission that "the appealed claims stand rejected as anticipated under 35 U.S.C. 102(b) by Doran, with Henze . . . being relied on to show a method for preparing the compound disclosed by Doran." Notwithstanding this admission, appellant has not argued that this method was beyond the level of ordinary skill in the pertinent art.[8] He has argued that *Wiggins, supra,* bars the use of Fujinaga (1960) because it is later in time than Doran (1959). However, this would not apply to the Henze patent, whose date (1944) is well before Doran, or to Henze et al. (1941). Moreover, contrary to *Wiggins,* we do not believe that a reference showing that a method of preparing the claimed subject matter would have been known by, or would have been obvious to, one of ordinary skill in the pertinent art, must antedate the primary reference. The critical issue under 35 U.S.C. § 102(b) is whether the claimed subject matter was in possession of the public more than one year prior to applicant's filing date—not whether the evidence showing such possession came before or after the date of the primary reference. Accordingly, we further hold that

the DMMP disclosed in Doran was in possession of the public within the critical period and, further, was "described in a printed publication," as required by 35 U.S.C. § 102(b).

■ As to appellant's argument that, where resort must be had to a second reference for a method of preparing a compound, a rejection under 35 U.S.C. § 102(b) is proper only if it can be shown that one skilled in the art would have had an incentive to make DMMP, this is reminiscent of the principle frequently applied against section 103 rejections, namely: that the teachings of references can be combined only if there is some suggestion or incentive to do so. Apparently, appellant would have the court extend this principle to section 102(b) rejections. This, however, we are unwilling to do. Additional references cited in a rejection under 35 U.S.C. § 102(b) are not relied on for a suggestion or incentive to combine teachings to meet claim limitations (as in a rejection under 35 U.S.C. § 103), but, rather, to show that the claimed subject matter, every material element of which is disclosed in the primary reference, was in possession of the public.

■ Appellant's further argument that "some practical utility" for DMMP must be disclosed in the prior art before Doran can serve as a statutory bar (since the microfilm reference would have indicated to one of ordinary skill in the art that DMMP was "without effect" or "without activity") is also not persuasive. As stated by this court in *In re Häfner,* 410 F.2d 1403, 1405, 56 CCPA 1424, 1426, 161 USPQ 783, 785 (1969)—

---

6. Contrary to the concurring opinion's suggestion, whether or not DMMP had been made previously is not essential to a determination that a method of preparing it would have been known by, or would have been obvious to, one of ordinary skill in the art.

7. In *In re Wiggins, supra* at 543, 179 USPQ at 424, this court remarked:

Every patent application and reference relies to some extent upon knowledge of persons skilled in the art to complement that disclosed in order that it be "enabling" within

the meaning of § 112 and to satisfy the requirements of a reference under § 102. . . *where it might be reasonably doubted that a reference . . . satisfies § 102 . . . other references can be cited as evidence of the level of skill in the art.* [Emphasis added.]

8. Apparently because he has conceded that Fujinaga "*suggests* to one skilled in the art a process by which DMMP could be prepared, *assuming one wished to prepare it.*"

a disclosure lacking a teaching of how to use a fully disclosed compound for a specific, substantial utility or of how to use for such purpose a compound produced by a fully disclosed process is, under the present state of the law, entirely adequate to anticipate a claim to either the product or the process and, at the same time, entirely inadequate to support the allowance of such a claim. [Footnotes omitted.]

That the microfilm [9] indicated that DMMP had been found to be without effect or activity [10] does not deprive the public of possession of the compound *per se*, since the public can test it for utility in new fields.

In view of the foregoing, the decision of the board is *affirmed*.

*AFFIRMED.*

BALDWIN, Judge, concurring.

I would not resolve this case on the broad "key issue" stated in the majority opinion. The issue should recognize the fact that the primary reference provided strong evidence that the described compound was made and tested. This fact is relevant to the anticipation issue. The fact exists in this case and we should not now attempt to decide future cases in which the fact does not exist.

If the issue in the case is as broad as the majority suggests. The court is abandoning our often expressed view that not every document which sets out a chemical structure. "describes" the chemical compound which has the structure. The matter is far too important to be handled as dicta. If the mere recitation of a formula "describes" a claimed compound, what life is left in Judge Rich's statement, speaking on behalf of the court, that "a formula is not a compound and while it may serve in a claim to *identify* what is being patented, as the metes and bounds of a deed identify a plot

of land, the thing that is being patented is not the formula but the compound identified by it." *In re Papesch*, 315 F.2d 381, 391, 50 CCPA 1084, 1097, 137 USPQ 43, 51 (1963).

A compound is described by a reference, in my view, if the reference recites the structure and recites or reliably and accurately predicts at least one significant property of the compound. In the case before us, I would treat the actual existence of the compound as legally equivalent to such a significant property.

---

9. Because the microfilm is referred to in Doran, all of its teachings are considered to have been incorporated into Doran.

10. As stated by the board in its opinion and decision on remand, the "without effect" notation on the microfilm could mean "without

effect as to hypnotic power." There is no evidence to show whether the Doran compound was without anticonvulsant activity, without hypnotic activity, or without some other activity which was being tested.