**In re John A. DONOHUE.**

**Appeal No. 79–633.**

United States Court of Customs and
Patent Appeals.

Sept. 11, 1980.
Rehearing Denied Nov. 6, 1980.

William H. Magidson and Stephen L.
Hensley, Chicago, Ill., for appellant.

Joseph F. Nakamura, Washington, D. C.,
for the Commissioner of Patents and Trade-
marks, Henry W. Tarring, Washington, D.
C., of counsel.

Before MARKEY, Chief Judge, BALD-
WIN and MILLER, Associate Judges, and
KASHIWA, Judge,* and FORD, Judge.**

MILLER, Judge.

This is an appeal from the decision of the
United States Patent and Trademark Office
(PTO) Board of Appeals (board) sustaining

---

* The Honorable Shiro Kashiwa, Judge, United
States Court of Claims, sitting by designation.

** The Honorable Morgan Ford, Judge, United
States Customs Court, sitting by designation.

the examiner's rejection under 35 U.S.C. § 102 of claims 1 and 5–7 of application serial No. 622,649, filed October 15, 1975, a continuation–in–part of application serial No. 517,506, filed October 24, 1974, for "Tetramethylbiphenyl–carboxylic Acids and Derivatives Thereof." We affirm.

## BACKGROUND

### Claims on Appeal

The following rejected claims are before us on appeal:

1. 2,2′,6,6′–tetramethylbiphenyl–4,4′–dicarboxylic acid compound.

5. The compound of Claim 1, wherein said compound comprises a diester containing from 1 to 24 carbon atoms in each ester moiety.

6. The compound of Claim 5, wherein said diester is a dialkyl ester.

7. The compound of Claim 6, wherein said dialkyl ester is the dimethyl ester.

These claims define compositions which are aromatic polycarboxylic acids, and derivatives thereof, suitable for producing polymers useful for forming shaped objects, such as film, fiber, and molded parts.

Claim 1 reads on the compound 2,2′,6,6′–tetramethylbiphenyl–4,4′–dicarboxylic acid (dicarboxylic acid TMBP). Claims 5–7 read on the compound 2,2′,6,6′–tetramethylbiphenyl–4,4′–dimethyl ester (dimethyl ester TMBP).

### The Rejection

The PTO has rejected these claims under 35 U.S.C. § 102 as being anticipated by Nomura et al.[1] (Nomura), a journal article describing a study of benzene–induced solvent shifts in disubstituted TMBPs and related compounds. At the beginning of this article is an abstract, the first sentence of which reads:

"Twelve 2,2′,6,6′-tetramethylbiphenyls 4,4′-disubstituted with NH₂, NMe₂, OH, OMe, Cl, Br, I, CO₂H, CO₂Me, CN, NO₂, and H, were synthesized and the [²H₆] benzene-induced solvent shifts Δ ξ = ξ (carbon tetrachloride)- ξ [²H₆] benzene ʃ of their ¹H n.m.r. spectra were compared with those of the corresponding 1-substituted 3,5-dimethyl-benzenes."

[Emphasis added to highlight disclosure of claimed compounds, dicarboxylic acid TMBP and dimethyl ester TMBP.]

Nomura does not disclose a method for preparing either dicarboxylic acid TMBP or dimethyl ester TMBP. However, it does disclose a method for preparing 2,2′,6,6′–tetramethybiphenyl–4,4′–dinitrile (dicyano TMBP). The PTO relies on two additional references, Lincoln[2] and Wagner et al.[3] (Wagner), to show that a method of making dicarboxylic acid TMBP and dimethyl ester TMBP from dicyano TMBP would have been within the knowledge of one of ordinary skill in the art.[4] The board cites this court's recent opinion in *In re Samour*, 571 F.2d 559, 197 USPQ 1 (Cust. & Pat.App. 1978), as authority for making this type of multi–reference anticipation rejection.

### Appellant's Arguments

Appellant's main contention is that it was improper for the PTO to rely on Lincoln and Wagner to determine whether the disclosure of Nomura is sufficient to place the claimed subject matter in possession of the public,[5] because resort may only be had to additional prior art in determining whether the disclosure of an allegedly anticipatory reference is adequate where the anticipatory reference itself places a certain minimum quantum of information in possession of the public.

In support of this proposition, appellant cites this court's opinions in *In re Sheppard*, 52 CCPA 859, 339 F.2d 238, 144 USPQ 42 (1964) and *In re Wiggins*, 488 F.2d 538, 179

1. Yujiro Nomura and Yoshito Takeuchi, *J. Chem. Soc. (B)*, 956–60 (1970).

2. U.S. patent No. 3,876,691, issued April 8, 1975, for "Process for the Hydrolysis of Nitriles," filed April 16, 1973.

3. Wagner et al., *Synthetic Organic Chemistry* 412–15 (John Wiley & Sons, N.Y., N.Y.) (1965).

4. Lincoln and Wagner describe a process for the conversion of nitriles to carboxylic acids.

5. Appellant also challenges the PTO's determination that Lincoln and Wagner evidence that a method of making the claimed compounds would have been within the knowledge of one of ordinary skill in the art.

USPQ 421 (1973), as well as the opinion in *In re Samour, supra,* saying:

> While the result in *In re Samour* differed from those in *In re Sheppard,* supra, and *In re Wiggins,* supra, this Court's approach to the issues was consistent in all three cases. Inquiry was directed first to the adequacy of the allegedly anticipatory reference under 35 U.S.C. 102. If the reference was found adequate, as in the case of the Doran reference in *In re Samour* which disclosed a compound within the scope of the claims and cited an independent reference which disclosed the compound and that the same had been tested, this Court concluded that the compound was adequately described and in possession of the public in view of the disclosure of other prior art that it would have been obvious to prepare the compound. If, on the other hand, the allegedly anticipatory reference was found not to contain the minimum disclosure required by 35 U.S.C. 102, as in the case of the Emeleus et al. reference in *In re Sheppard* and the Guidicelli reference in *In re Wiggins,* both of which named chemical compounds but disclosed unsuccessful attempts to prepare the same, this Court concluded that the existence of known or obvious methods to prepare such compounds was not sufficient to place the claimed compounds in possession of the public.

Appellant argues that Nomura does not supply the required threshold amount of information, because the totality of his teaching with respect to the claimed compounds is no more than the recitation of the compounds and an allegation, unsupported by and inconsistent with the body of the reference, that such compounds were prepared and certain spectral properties measured. In that regard, appellant notes that the text of Nomura fails to name or disclose properties or preparation of the claimed compounds, whereas each of the other compounds named in the abstract is discussed in the text, and properties and preparations are reported.

The solicitor submits that under *Samour* the appropriate test to be applied to Nomura's disclosure is whether or not it placed the claimed compounds in possession of the public. He argues that "Nomura's publication clearly indicates that the . . . [compounds] . . . 'were synthesized' . . ." and, together with the Lincoln and Wagner references, is sufficient to support a rejection under 35 U.S.C. § 102, because it is established, by evidence extrinsic to the Nomura reference, that one of ordinary skill in the pertinent art would know how to prepare the indicated compound.

The solicitor argues that appellant's reliance on *Wiggins* and *Sheppard* as governing the present situation is misplaced, thus:

> In both of these cases the pertinent prior art failed to provide a definitive indication that the claimed compounds had been prepared. In *Sheppard* the prior art, a publication by Emeleus et al., inicated [sic] several reaction schemes failed to produce the claimed compound. In *Wiggins,* the reference similarly disclosed unsuccessful attempts to prepare the claimed compounds. In both of these cases the most that the references established was the possible existence of the claimed compounds and unsuccessful attempts to produce these compounds. In the present case, Nomura states that the claimed compounds "were synthesized" and further indicates that their n.m.r. (nuclear magnetic resonance) properties were measured. This teaching, on its face, clearly indicates that the compounds had actually been prepared and actually existed.

## OPINION

██ For a publication to constitute an anticipation of an invention and, thus, to bar the grant of a patent under 35 U.S.C. § 102, it must be capable, when taken in conjunction with the knowledge of those skilled in the art to which it pertains, of placing that invention in the possession of the public. *In re LeGrice,* 49 CCPA 1124, 1145, 301 F.2d 929, 944, 133 USPQ 365, 378

(1962), *In re Brown*, 51 CCPA 1254, 1259, 329 F.2d 1006, 1011, 141 USPQ 245, 249 (1964). In determining whether the claimed compounds were in possession of the public, the *totality* of the Nomura article, including its abstract, must be considered. *In re Armbruster*, 512 F.2d 676, 679, 185 USPQ 152, 154 (Cust.& Pat.App. 1975). Thus, the statement in the Nomura abstract, that the dicarboxylic acid and dimethyl ester were "synthesized and the . . . solvent shifts . . . of their $^1$H n.m.r. spectra were compared with those of the corresponding 1–substituted 3,5–dimethylbenzenes," must be taken at face value in the absence of evidence or reasoning inconsistent therewith. One of ordinary skill in the art, having knowledge of Nomura, would envision each compound, including the claimed acid and ester. *In re Petering*, 49 CCPA 993, 301 F.2d 676, 133 USPQ 275, 279–80 (1962); *see In re Schaumann*, 572 F.2d 312, 315–16, 197 USPQ 5, 8–9 (Cust. & Pat.App. 1978).

■ In *In re Samour, supra*, this court upheld the PTO's 35 U.S.C. § 102(b) rejection of chemical composition claims. The primary reference named a composition falling within the scope of the claims and indicated that it had previously been made and tested; additional references showed that a method of making this composition would have been within the knowledge of one of ordinary skill in the art. The court said:

> Additional references cited in a rejection under 35 USC 102(b) are not relied on for a suggestion or incentive to combine teachings to meet claim limitations (as in a rejection under 35 USC 103), but, rather, to show that the claimed subject matter, *every material element of which is disclosed in the primary reference*, was in possession of the public. [Emphasis added.]

571 F.2d at 563, 197 USPQ at 4–5. *See In re Sasse*, 629 F.2d 675, 681, —— USPQ ——, —— (Cust. & Pat.App. 1980). Accordingly, the PTO's use of the Lincoln and Wagner references to show that a method of making Nomura's dicarboxylic acid TMBP and dimethyl ester TMBP was in possession of the public was proper.

■ Nomura expressly states that the two compounds were synthesized and tested. Taking these statements at face value and bearing in mind the limited number of compounds disclosed by Nomura and the close similarity among them, we conclude that the dicarboxylic acid TMBP and the dimethyl ester TMBP would have been known to one of ordinary skill in the art. In *Samour*, the prior art reference stated that the involved composition cited had been made and tested, as does Nomura in this case. The record in *Samour* was bolstered by a microfilm showing the structural formula of the involved compound, with the notation that the compound was "without effect" or "without activity." Here, there is no independent evidence of actual testing of the compounds at issue. However, the dissenting opinion's conclusion that "one of ordinary skill in this art would have been *uncertain* [6] from Nomura as to whether or not dicarboxylic acid TMBP and dimethyl ester TMBP had ever been prepared" is mere speculation.[7]

As to whether the Lincoln and Wagner references show one of ordinary skill in the art how to prepare the compounds, we agree with the board that awareness of a method of conversion from Nomura's nitrile precursors to the corresponding claimed compounds is substantiated by Lincoln and Wagner.

■ In view of the foregoing, we hold that the dicarboxylic acid TMBP and the dimethyl ester TMBP were in possession of

**6.** In *In re Samour, supra* at 563–64, 197 USPQ at 5, the court noted that proof of utility is not a prerequisite to availability of a prior art reference under 35 USC § 102(b). Moreover, in *Sheppard* and *Wiggins, supra*, the prior art disclosures were not enabling because there was evidence showing that the method of pre-

paring the compounds did not work. No such evidence is present here.

**7.** We note that actual testing of the compounds is not essential. *Samour, supra* at 563 n.6, 197 USPQ at 4 n.6.

the public at the time of appellant's application.

The rejection of claims 1 and 5–7 under 35 U.S.C. § 102(b) is *affirmed*.

*AFFIRMED.*

FORD, Judge,* dissenting, with whom BALDWIN, Judge, joins.

I respectfully dissent. As stated in the majority opinion, for a publication to constitute an anticipation of an invention, and thus bar the grant of a patent under 35 U.S.C. § 102, it must be capable, when taken in conjunction with the knowledge of those skilled in the art to which it pertains, of placing that invention in the possession of the public. *In re LeGrice* and *In re Brown*, cited in the majority opinion.

Applying this rule in *In re Samour*, 571 F.2d 559, 197 USPQ 1 (Cust. & Pat.App. 1978), this court upheld the PTO's 35 U.S.C. § 102(b) rejection of chemical composition claims, where: the primary reference named a composition falling within the scope of the claims, and reported that said composition had been previously made and tested; and additional references evidenced that a method of making this composition would have been within the knowledge of one of ordinary skill in the art. The court explained:

> Additional references cited in a rejection under 35 USC 102(b) are not relied on for a suggestion or incentive to combine teachings to meet claim limitations (as in a rejection under 35 USC 103), but, rather, to show that the claimed subject matter, *every material element of which is disclosed in the primary reference*, was in possession of the public. [Emphasis added.]
>
> 571 F.2d at 563, 197 USPQ at 4–5.

The *Samour* case was not the first instance where this court reviewed such a multi–reference anticipation rejection of chemical composition claims. This type of rejection had been before the court in *In re Wiggins*, 488 F.2d 538, 179 USPQ 421 (1973). There, the primary reference disclosed compositions falling within the scope of the appealed claims, but reported that attempts to synthesize these compounds were unsuccessful. As in *Samour*, the PTO relied on an additional reference as evidence that a method of making these compositions would have been within the knowledge of one of ordinary skill in the art. However, in *Wiggins*, the court would not consider this additional evidence, reasoning that the mere naming of compounds by the primary reference did not constitute a description of the invention within the meaning of 35 U.S.C. § 102(b).[1]

In the case at bar, the claimed compounds, dicarboxylic acid TMBP and dimethyl ester TMBP, are named in the first sentence of the abstract of Nomura. According to this statement, these two compounds along with ten other 4,4'–disubstituted–2,2',6,6'–tetramethyl–biphenyls

(TMBPs) were synthesized and the benzene-induced solvent shifts of their n.m.r. spectra were compared with those of a series of related compounds. However, the article that follows fails to mention either dicarboxylic acid TMBP or dimethyl ester TMBP. And the text of the article casts doubt as to the accuracy of the statement made in the abstract.

According to the statement in the abstract, the twelve TMBPs were compared

---

* The Honorable Morgan Ford, Judge, United States Customs Court, sitting by designation.

**1.** The court also faulted the additional evidence for not showing that a method for making the compositions in question was developed prior to the effective date of the primary reference. This requirement, however, that the how–to–make evidence predate the primary reference, was discarded by this court in *Samour*, wherein it was explained that "[t]he critical issue under 35 USC 102(b) is whether the claimed subject matter was in possession of the public more than one year prior to applicant's filing date–not whether the evidence showing such possession came before or after the date of the primary reference." 571 F.2d at 563, 197 USPQ at 4.

with twelve related compounds. But table 4,[2] which sets forth this comparison, does not include any data for dicarboxylic acid TMBP, dimethyl ester TMBP, or their related compounds. Nor for that matter does Table 1 [3] which discloses the n.m.r. spectra of the TMBPs, or Table 3 [4] which discloses the n.m.r. spectra of the related compounds with which these TMBP's were allegedly compared. Furthermore, at the end of the article there is a section which sets forth how the materials used in the study were made. And included are processes for preparing all of the TMBPs listed in the abstract, *except* dicarboxylic acid TMBP and dimethyl ester TMBP. Lastly, while the claimed TMBPs are listed in the abstract but not discussed in the text, another

2.

TABLE 4

Difference of substituent solvent shifts (SSS') between 4,4'-disubstituted 2,2',6,6'-tetramethylbiphenyls (III) and 1-substituted 3,5-dimethylbenzenes (V) ª

| Substituent | $o$-H | $m$-Me |
|---|---|---|
| $NH_2$ | 0.01 | -0.07 |
| $NMe_2$ | -0.06 | -0.10 |
| OH | 0.06 | -0.01 |
| OMe | -0.01 | -0.05 |
| Cl | 0.07 | 0.05 |
| Br | 0.08 | 0.07 |
| I | 0.04 | 0.08 |
| CN | 0.11 | 0.15 |
| $NO_2$ | 0.14 | 0.15 |

ª SSS' values for *ortho*-ring proton and for *meta*-methyl protons can be calculated as the difference of SSS values for the appropriate protons of (III) and (V).

TABLE 1

¹H N.m.r. spectra of 4,4'-disubstituted 2,2',6,6'-tetramethylbiphenyls (III) ª

| Substut. X | | H(3,3',5,5') ($o$-H) | Me(2,2',6,6') ($m$-Me) | H in X |
|---|---|---|---|---|
| H | $\delta(CCl_4)$ | 7.01 | 1.88 | |
| | $\delta(C_6D_6)$ | 7.10 | 1.89 | |
| | Δ | -0.09 | -0.01 | |
| $NH_2$ | $\delta(CCl_4)$ | 6.27 | 1.78 | 3.28 |
| | $\delta(C_6D_6)$ | 6.28 | 1.97 | 2.65 |
| | Δ | -0.01 | -0.19 | 0.63 |
| | SSS | 0.08 | -0.18 | |
| $NMe_2$ | $\delta(CCl_4)$ | 6.36 | 1.84 | 2.89 |
| | $\delta(C_6D_6)$ | 6.65 | 2.11 | 2.68 |
| | Δ | -0.29 | -0.27 | 0.21 |
| | SSS | -0.20 | -0.26 | |
| OH | $\delta(CCl_4)$ | 6.47 | 1.82 | 4.13 |
| | $\delta(C_6D_6)$ | 6.42 | 1.84 | 4.06 |
| | Δ | 0.05 | -0.02 | 0.07 |
| | SSS | 0.14 | -0.01 | |
| OMe | $\delta(CCl_4)$ | 6.54 | 1.84 | 3.77 |
| | $\delta(C_6D_6)$ | 6.77 | 1.93 | 3.46 |
| | Δ | -0.23 | -0.09 | 0.31 |
| | SSS | -0.14 | -0.08 | |
| Me | $\delta(CCl_4)$ | 1.85 | 1.85 | 2.29 |
| | $\delta(C_6D_6)$ | 6.91 | 1.94 | 2.23 |
| | Δ | -0.07 | -0.09 | 0.06 |
| | SSS | 0.02 | -0.08 | |
| Cl | $\delta(CCl_4)$ | 7.05 | 1.85 | |
| | $\delta(C_6D_6)$ | 7.01 | 1.59 | |
| | Δ | 0.04 | 0.26 | |
| | SSS | 0.13 | 0.27 | |
| Br | $\delta(CCl_4)$ | 7.21 | 1.88 | |
| | $\delta(C_6D_6)$ | 7.13 | 1.56 | |
| | Δ | 0.08 | 0.32 | |
| | SSS | 0.17 | 0.33 | |
| I | $\delta(CCl_4)$ | 7.41 | 1.84 | |
| | $\delta(C_6D_6)$ | 7.39 | 1.53 | |
| | Δ | 0.02 | 0.31 | |
| | SSS | 0.11 | 0.32 | |
| CN | $\delta(CCl_4)$ | 7.41 | 1.90 | |
| | $\delta(C_6D_6)$ | 6.86 | 1.35 | |
| | Δ | 0.55 | 0.55 | |
| | SSS | 0.64 | 0.56 | |
| $NO_2$ | $\delta(CCl_4)$ | 7.08 | 2.00 | |
| | $\delta(C_6D_6)$ | 7.73 | 1.41 | |
| | Δ | 0.25 | 0.59 | |
| | SSS | 0.34 | 0.60 | |

ª δ(CCl₄), chemical shifts in CCl₄ relative to tetramethylsilane (p.p.m.); δ(C₆D₆), chemical shifts in [²H₆]benzene relative to tetramethylsilane (p.p.m.); Δ = δ(CCl₄) − δ(C₆D₆); SSS (substituent solvent shift), for definition, see text.

4.

TABLE 3

¹H N.m.r. spectra of 1-substituted 3,5-dimethylbenzenes (V) ª

| Substnt. X | | H(2,6) ($o$-H) | H(4) ($p$-H) | Me(3,5) ($m$-Me) | H in X |
|---|---|---|---|---|---|
| H | $\delta(CCl_4)$ | 6.85ᵇ | 6.87ᵇ | 2.27 | |
| | $\delta(C_6D_6)$ | 6.87ᵉ | 6.89ᵉ | 2.11 | |
| | Δ | -0.02 | -0.02 | 0.16 | |
| $NH_2$ | $\delta(CCl_4)$ | 6.11 | 6.26 | 2.17 | 3.29 |
| | $\delta(C_6D_6)$ | 6.06 | 6.38 | 2.12 | 2.79 |
| | Δ | 0.05 | -0.12 | 0.05 | 0.50 |
| | SSS | 0.07 | -0.10 | -0.11 | |
| $NMe_2$ | $\delta(CCl_4)$ | 6.22 | 6.22 | 2.23 | 2.89 |
| | $\delta(C_6D_6)$ | 6.38 | 6.46 | 2.23 | 2.58 |
| | Δ | -0.16 | -0.24 | 0.00 | 0.31 |
| | SSS | -0.14 | -0.22 | -0.16 | |
| OH | $\delta(CCl_4)$ | 6.32 | 6.44 | 2.22 | 5.21 |
| | $\delta(C_6D_6)$ | 6.26 | 6.43 | 2.06 | 4.34 |
| | Δ | 0.06 | 0.01 | 0.16 | 0.87 |
| | SSS | 0.08 | 0.03 | 0.00 | |
| OMe | $\delta(CCl_4)$ | 6.39 | 6.45 | 2.26 | 3.71 |
| | $\delta(C_6D_6)$ | 6.54 | 6.51 | 2.13 | 3.37 |
| | Δ | -0.15 | -0.06 | 0.13 | 0.34 |
| | SSS | -0.13 | -0.04 | -0.03 | |
| Me | $\delta(CCl_4)$ | 6.64 | 6.64 | 2.19 | 2.19 |
| | $\delta(C_6D_6)$ | 6.69 | 6.69 | 2.15 | 2.15 |
| | Δ | -0.05 | -0.05 | 0.04 | 0.04 |
| | SSS | -0.03 | -0.03 | 0.06 | 0.06 |
| Cl | $\delta(CCl_4)$ | 6.88 | 6.78 | 2.29 | |
| | $\delta(C_6D_6)$ | 6.84 | 6.50 | 1.91 | |
| | Δ | 0.04 | 0.28 | 0.38 | |
| | SSS | 0.06 | 0.30 | 0.22 | |
| Br | $\delta(CCl_4)$ | 7.07 | 6.81 | 2.28 | |
| | $\delta(C_6D_6)$ | 7.00 | 6.52 | 2.28 | |
| | Δ | 0.07 | 0.29 | 0.39 | |
| | SSS | 0.09 | 0.31 | 0.26 | |
| I | $\delta(CCl_4)$ | 7.27 | 6.86 | 2.26 | |
| | $\delta(C_6D_6)$ | 7.22 | 6.54 | 1.86 | |
| | Δ | 0.05 | 0.32 | 0.40 | |
| | SSS | 0.07 | 0.34 | 0.24 | |
| CN | $\delta(CCl_4)$ | 7.22 | 7.14 | 2.35 | |
| | $\delta(C_6D_6)$ | 6.71 | 6.58 | 1.78 | |
| | Δ | 0.51 | 0.56 | 0.57 | |
| | SSS | 0.53 | 0.58 | 0.41 | |
| $NO_2$ | $\delta(CCl_4)$ | 7.76 | 7.24 | 2.42 | |
| | $\delta(C_6D_6)$ | 7.58 | 6.61 | 1.81 | |
| | Δ | 0.18 | 0.63 | 0.61 | |
| | SSS | 0.20 | 0.65 | 0.45 | |

ᵉ For definitions, see footnote to Table 1. ᵇ Data from F. A. Bovey, F. P. Hood, E. Pier, and H. E. Weaver, *J. Amer. Chem. Soc.*, 1967, **87**, 2060. ᵉ Estimated from the chemical shifts of the highest peaks in CCl₄ and in [²H₆]benzene respectively.

TMBP, dimethyl TMBP is discussed in the text but not listed in the abstract.[5]

In light of all of these inconsistencies between the abstract and the body of the Nomura article, I conclude that one of ordinary skill in this art would have been *uncertain* from Nomura as to whether or not dicarboxylic acid TMBP and dimethyl ester TMBP had ever been prepared. Thus, the mention of the claimed compounds in the Nomura abstract amounts to no more than the mere naming of the compound, which under our rationale in *Wiggins* would be insufficient to constitute a description of the subject compounds.

In *In re Sheppard*, supra, this court had before it an allegedly anticipatory reference (Emeleus) having an equivocal disclosure with regard to the existence of the claimed chemical composition. Emeleus stated that either phenylsulfur pentafluoride (the claimed composition), or phenylsulfur trifluoride, (a composition falling outside of the claims) had been formed before decomposing. The court in *Sheppard* held, *inter alia*:

> The uncertainty which pervades the teaching of the reference leads us to conclude that Emeleus cannot properly be held an enabling disclosure.
>
> 52 CCPA at 863, 339 F.2d at 241, 144 USPQ at 45.

Here, the uncertainty which pervades Nomura compels the conclusion that Nomura does not contain a definitive recognition that the claimed compounds exist. Therefore, Nomura does not disclose all material elements of the claimed subject matter. Because Nomura is deficient in this regard, it was improper, in my opinion, for the PTO to resort to additional references to show that a method of making the claimed composition would have been within the knowledge of one of ordinary skill in the art.

Accordingly, I would reverse the decision of the board.

5. N. m. r. data for dimethyl TMBP is included in Table 1, and a method for preparing this

TMBP is set forth at the end of the article.