30 C.C.P.A.(Patents)

## In re HANNA.
### Patent Appeal No. 4707.

Court of Customs and Patent Appeals.

June 1, 1943.

Blair, Curtis & Dunne and Paul A. Blair, all of Washington, D. C. (Edward G. Curtis, Charles C. Ladd, and Gordon K. Lister, all of New York City, and J. Harold Kilcoyne, of Washington, D. C., of counsel), for appellant.

W. W. Cochran, of Washington, D. C. (R. F. Whitehead, of Washington, D. C., of counsel), for the Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Board of Appeals of the United States Patent Office affirming the decision of the examiner rejecting three claims, numbered 24, 25, and 26, introduced by amendments into appellant's application for patent filed August 6, 1936, which application was a division of a prior application filed November 6, 1928.

The subject matter of the application relates to stokers, "particularly to stokers for use on locomotives and the like." For reasons hereinafter appearing it is unnecessary to quote or analyze the claims.

It appears that claims 25 and 26 were copied from a patent, No. 2,029,295, issued to one H. P. Anderson February 4, 1936, upon an application originally filed June 24, 1930, and renewed June 9, 1934, appellant's purpose in copying them being to secure declaration of an interference with the Anderson patent. In the patent the claims were numbered 28 and 29.

The record certified to us by the Commissioner of Patents does not embrace the text of the proposal to amend by copying the claims from the patent, but it appears that it took place at some time between February 18, 1941, and May 13, 1941, the same occurring under the following circumstances.

Appellant's divisional application filed August 6, 1936, seems to have been allowed on January 11, 1939, and on May 6, 1939, he renewed it with claims additional to the claims which had been granted. On April 12, 1940, the renewal application was amended by consolidating and rewriting claims 21 and 23 thereof, the new or amended claim being numbered 24, and being the claim 24 here involved. With the amendment appellant called attention to claim 29 of the Anderson patent and suggested that if the latter claim was allowed Anderson "it would seem logical that appellant's claim 24 should be allowed."

No interference proceeding was suggested or requested by appellant at that time, but favorable consideration was re-

quested "of claims 22 and 24" with the further request that in the event of their rejection "the amendments to claim 22, together with claim 24, be entered for purposes of appeal." On April 17, 1940, claim 22, as amended (the amendments being of no consequence here), was finally rejected by the examiner (apparently it had been previously rejected on October 19, 1939, before amendment) upon a patent to one Fahnestock in view of a patent to one Jackson, and new claim 24 was finally rejected by him upon the patent to Jackson alone. With respect to appellant's reference to the Anderson patent the examiner said: "Applicant's remarks as to the Anderson patent 2,029,295 are noted, but there is nothing in that situation which would warrant the Examiner in reversing his present position or allowing the rejected claims. Aside from the fact that these claims must be considered here on their merits, rather than by blind following of alleged precedent which may have involved other factors and other background of art, it is to be noted that applicant had opportunity to copy claim 29 of Anderson promptly and seek an interference, but did not avail himself of that opportunity. The question of interference cannot now be entertained."

Upon appeal, the board, in a decision rendered February 18, 1941, reversed the examiner's decision rejecting the claims on the patents cited (and claim 22 stands allowed), but of its own motion rejected claim 24 "as not patentably distinguishing over the matter disclosed and claimed in Anderson."

This was the first citation of the Anderson patent as a reference and, since it constituted a new ground of rejection, prosecution of the case was reopened before the examiner under Patent Office rule 139, and appellant then, upon some date not disclosed by the record before us, copied the claims of the Anderson patent which became claims 25 and 26 here at issue (thus adding them to claim 24 for consideration) and, for the first time, requested the declaration of an interference with the Anderson patent. So far as we can determine from the record, the request for an interference did not specifically embrace claim 24 which, as has been indicated, was a new claim originating with appellant and not copied from the patent.

It will be noted that claim 24 was introduced more than four years after the issuance of the Anderson patent and that claims 25 and 26, in connection with which the interference was sought, were introduced more than five years after such issuance.

In a decision dated May 13, 1941, the examiner expressed "full concurrence with the ultimate conclusion reached by the Board that claim 24 is not in fact patentable to applicant," and denied appellant's request that he withdraw the Anderson patent as a reference.

It appears from that decision of the examiner that he had previously rejected claims 25 and 26 on April 28, 1941, and that he adhered to that rejection. The decision of April 28, 1941, is not in the record, but in the examiner's statement following the second appeal to the board it is stated: "Claims 25 and 26, verbatim copies of Anderson's claims 28, 29, stand rejected on the ground that they are not readable on applicant's disclosure and on the ground that applicant has no right at this time to copy the patent claims and contest priority, because of laches."

Following the above, the examiner analyzed the claims, stated his reasons for holding that they were not readable upon appellant's disclosure, and (we quote at some length because of the character of the issue involved) continued:

"It is obvious that the ultimate issue here involved, including the question of declaring an interference with a patent (a matter for the discretion of the Commissioner) cannot be entirely separated from the question of patentability of claims 25, 26 to applicant (a matter for review by the Board of Appeals). Certain comments are therefore appended.

"Applicant urges that it was the duty of the Examiner to suggest a claim or claims of Anderson to him for the purpose of interference, and that no responsibility rested on him [applicant] to discover interfering patent claims and copy them promptly. The Examiner does not agree with this position, and after a careful review of the record in this case and its parent case fails to find evidence of any situation where it would have been proper for the Examiner to suggest an interference.

"The present case as filed was directed to a coal crushing feature irrelevant to the present issue; and for two years after issue of the Anderson patent, it contained no claim suggestive of conflict with Anderson. During the same period no claims of the

parent case warranted interference proceedings. Certain claims canceled from the parent case before the critical period began, are urged as maintaining the present right to an interference, but applicant's theory of relying on a claim pending at any time in the life of the application is deemed unsound. In the opinion of the Examiner, the most careful interference search on Anderson's claims as passed for issue, and on applicant's claims during the period Feb. 4, 1936 to Feb. 4, 1938, would not have revealed any basis for interference.

\*     \*     \*     .\*     \*

"The critical period relied on by the Examiner, running two years from the issuance of the patent, is deemed warranted by Chapman v. Wintroath, 252 U.S. 126 [40 S.Ct. 234, 64 L.Ed. 491].

"Since applicant was the first to call attention to the Anderson patent and to claim 29 thereof, under date of April 12, 1940, when the patent had been outstanding for more than four years, without copying a claim or requesting interference, it would have been manifestly improper for the Examiner to suggest that action. Applicant might have had good reasons unknown to the Examiner for not copying a claim; moreover, at that time the two-year period for copying patented claims had long passed. Indeed, the Examiner never found it necessary to decide whether applicant could make a claim of Anderson until the filing of claims 25, 26 on April 17, 1941 presented this question; whereupon he promptly found and ruled that such claims were not properly supported.

"Applicant has never raised the question whether claims 25 and 26 could be modified slightly as to wording to render them readable on his own disclosure, but without material change of substance, and so support an interference under the doctrine of Card and Card, 112 O.G. 499. Obviously, no advance ruling could be made on such proposal because of indefiniteness as to what changes might be involved.

"Applicant's failure throughout a period of more than five years from the issue of the Anderson patent to request interference therewith, with delay for more than one year after scrutinizing the patent before filing the request, is held to constitute laches defeating his right to contest priority with the patentee."

The appeal to the board from the examiner's decision of May 13, 1941, was taken June 2, 1941, various reasons of appeal being stated. In its decision (from which the present appeal to us was taken) the board summarized the issues presented by the reasons of appeal as follows:

"Three essential questions are involved in this appeal, namely:

"(1) Do claims 25 and 26, copied from the Anderson patent 2,029,295, Feb. 4, 1936, read upon appellant's disclosure?

"(2) Does claim 24 patentably distinguish over the matter claimed by Anderson? and

"(3) Is appellant estopped from copying Anderson's claims?"

The board disagreed with the examiner's holding that claims 25 and 26 are not readable upon appellant's disclosure, and further held that there was no "patentable distinction between claim 24 and the matter claimed in claims 25 and 26," but held that appellant was estopped from "copying Anderson's claims," saying:

"Coming now to the third question [above stated], it appears to be clear that appellant was not asserting any claims which would dominate the matter claimed in the Anderson patent at any time during the two years following the issuance of that patent. While we have considered the arguments advanced by appellant, it is our view that his position is not sound. It is considered that it is immaterial whether an applicant is aware of a patent or not as the law does not require him to make the identical claims of the patent; all that is required is that he shall be urging claims covering the matter which is claimed in the patent before the critical period has terminated and shall continue to urge such claims. We do not consider that an examiner's failure to suggest copying claims of a patent excuses an applicant from not copying them. We do not imply by this statement that we think that the examiner should have made such a suggestion in this case. It is considered, therefore, that appellant is clearly estopped from copying claims of the patent or from receiving the allowance of claims which do not patentably distinguish over the matter claimed in the patent.

"To the extent and for the reasons above stated, the decision of the examiner is affirmed in rejecting all of the appealed claims."

So, we have this situation:

Appellant has presented claims which, in the opinion of the board, he might have

made based upon the disclosure of his application which was copending with the Anderson application, and which had they been presented either before the issuance of the Anderson patent or in due time after its issuance presumably would have led to the declaration of an interference between appellant and Anderson. No such claims were presented, however, until more than four years (if claim 24 be regarded as presenting interfering subject matter) after the Anderson patent issued, and no interference was requested by appellant until more than five years after the patent had issued when the copied claims were presented, and the Anderson patent was treated by the board as a reference against all the claims.

While appellant in his reasons of appeal before us alleges that the board erred "in holding that the later-filed Anderson patent may properly be used as an anticipating reference against applicant's claims," his contention in that regard is not based upon the merits of the claims but constitutes a part of his argument respecting his right to have an interference declared.

So, the only question with which we are here concerned is the question of estoppel. The board did not cite any authority in its decision but, presumably, agreed with the examiner as to the applicability of the decision of the Supreme Court in the case of Chapman v. Wintroath, 252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491.

The earliest court decision bearing upon the question here involved is that in the case of Rowntree v. Sloan, 45 App.D.C. 207. The facts as stated in the decision were that Rowntree was granted a patent (relating to passenger cars) on October 5, 1909, upon an application filed May 21, 1908. At the time it was filed there was an application of Sloan (relating to the same subject matter) pending which had been filed October 21, 1907. On October 7, 1912, three years after the issuance of the patent to Rowntree, Sloan copied certain of the patent claims and requested an interference, which was declared.

So far as we can determine from the court's decision, the counts were considered on their merits by the different tribunals of the Patent Office and priority was finally awarded Sloan by the Commissioner of Patents who, under the practice then prevailing, had final jurisdiction, so far as the Patent Office was concerned, of interference controversies. As we understand the

decision of the court, it was of opinion that the commissioner erred as to the merits, but the court reversed upon the ground of estoppel because of laches, saying: "While in our opinion the view of the lower tribunals was correct, it is unnecessary to discuss the matter, for the reason that Sloan's laches, in failing within a reasonable time after the issuance of the Rowntree patent to make these claims, estopped him to make them at all. * * * By his [Sloan's] delay, if his present contention should be accepted, the life of the monopoly would be extended for a period of three years. If he thought these claims read upon his application, it was his duty promptly to make them, at least within the time allowed for amendment after office action, and his failure to do so is fatal to his present contention. We have not overlooked his contention that there were claims in his application as originally filed approximating the claims of the issue. It is enough to say that we are clearly of the opinion that this contention is not justified by the record."

It is apparent from the foregoing that it was the purpose of the Court of Appeals to lay down a rule in cases such as that then before it to the effect that an applicant in Sloan's position should copy claims within *one year* after the issuance of a patent to one in Rowntree's position. While it is pointed out in the decision in an italicized phrase that Sloan did not copy the claims until three years after the issuance of the patent, the court's conclusion obviously was not based upon "three years" delay, but would have been the same had the period of delay been any period exceeding one year. Although it was not definitely expressed in that particular decision, subsequent decisions of the Court of Appeals, hereinafter referred to, made it clear that in laying down what may be called a "one year rule" the court regarded the situation as being analogous to that created by the statutory provision of R.S. § 4894, 35 U.S. C.A. § 37, which, at that time, limited to one year after Patent Office action thereon any further prosecution of an application for patent.

The decision of the Supreme Court in the case of Chapman v. Wintroath, supra (rendered March 1, 1920), is so familiar that we deem it unnecessary to state the facts at any great length.

Briefly, on July 6, 1915, about twenty months after the issuance of a patent to Wintroath (dated November 25, 1913),

Chapman and Chapman filed a divisional application (the original having been filed in 1909) in which the claims of the Wintroath patent were copied, and an interference was declared. The final decision in the Patent Office was in favor of the Chapmans, but upon appeal the Court of Appeals for the District of Columbia (47 App.D.C. 428) reversed the Patent Office decision, on the ground of laches, holding, in effect, that by analogy to the time allowed by statute for the filing of amendments to applications, Chapman's delay of more than a year in filing a divisional application amounted to laches and barred its allowance (the Rowntree v. Sloan case, supra, being cited) and awarded priority to Wintroath.

The Supreme Court granted writ of certiorari, and reversed the decision of the Court of Appeals, basing its action, under the facts there appearing, upon the statutes and the rules of the Patent Office. The rules of law announced by the Supreme Court are epitomized in the syllabus of the case as follows:

"An inventor whose application disclosed but did not claim an invention which is later patented to another, is allowed by the patent law two years after such patent issues within which to file a second or divisional application claiming the invention; and this period may not be restricted by the courts upon the ground that so much delay may be prejudicial to public or private interests. * * * Rev.Stats. § 4886 [35 U.S.C.A. § 31].

"Such a second application is not to be regarded as an amendment to the original application and so subject to the one year limitation of Rev.Stats. § 4894 [35 U.S. C.A. § 37]. * * *

"Nor can the right to make it be deemed lost by laches or abandonment merely because of a delay not exceeding the two years allowed by the statute. * * *"

In the course of its decision the Supreme Court alluded to the decision of the Court of Appeals in the Rowntree v. Sloan case, supra, and in effect, disapproved of the "one year rule" there stated. We find no intimation in the opinion as to what the Supreme Court's view would have been upon the basis of a three-year delay (which was the situation in the Rowntree case, supra,) but, as is stated in the brief of the Solicitor for the Patent Office, the Supreme Court "in no way criticized the theory of the Court of Appeals that an ap-

plicant might be barred from copying the claims of a patent by delay in presenting them." Indeed, the Supreme Court stated that it was not intended "to intimate that there may not be abandonment which might bar an application within the two-year period allowed for filing," but held that there had been no dereliction on the part of the Chapmans which destroyed their legal statutory right to file within two years.

In appellant's brief before us it is said: "The Wintroath case holds generally that an applicant, if he wishes to obtain claims which are already patented, must ask for an interference with the patentee within two years of the date of issuance of the patent unless he can adequately excuse a longer delay."

It is appellant's view, however, that the decision of the Court of Appeals for the District of Columbia in the case of Chapman v. Beede, 54 App.D.C. 209, 296 F. 956, 958, decided March 3, 1924, "qualifies" the doctrine of the Wintroath case, supra, "by holding that where the applicant has been claiming substantially the subject matter of the patented claims he may ask for an opportunity to prove priority more than two years after the date of issuance of the patent," and contends that he falls within the terms of that holding.

It appears that in the Beede case, supra, Beede's application was filed November 6, 1914, and an application of Chapman was filed November 27, 1916, upon which a patent issued January 15, 1918. On December 20, 1920 (almost three years after the issuance of the patent), Beede copied certain of the claims and an interference was declared which was decided in Beede's favor by the tribunals of the Patent Office, whose decision upon appeal was affirmed by the Court of Appeals. That is to say priority was awarded to Beede.

In its decision the Court of Appeals (after citing Mahn v. Harwood, 112 U.S. 354, 5 S.Ct. 174, 6 S.Ct. 451, 28 L.Ed. 665) interpreted the decision of the Supreme Court in the Chapman v. Wintroath case, supra, as follows: "It is apparent, therefore, that the underlying principle of the [Supreme Court's] decision in the Chapman-Wintroath case is that, where an inventor files an application disclosing an invention not embraced in his claims, and allows two years to elapse after the issuance of a patent to another embracing the matter not so claimed, he in effect has dedicated such invention to the public. When the prior ap-

plication matures into a patent, it will be notice to the public of what it discloses, and, should it appear, in a suit upon the prior patent, that the patentee there was not the original inventor, of course his patent would be invalid, and the public would reap the benefit. To permit a party, who discloses, but does not claim, interfering subject-matter, to file a second application years after the issuance of a patent to another, would, in the event of a judgment of priority in his favor, prolong the monopoly granted by the statute, and thus frustrate its object. This would encourage delay, because, by dilatory tactics, an application might be kept alive in the Patent Office until the invention was successfully exploited. There is every reason, therefore, why the two-year rule should be rigidly adhered to in such a situation."

After stating the foregoing, however, the court, in effect, held that inasmuch as Beede had not only disclosed *but was claiming* the subject matter of the interference at a time *anterior* to the filing of the Chapman application, the reason for the "two year rule" was not applicable in that case, saying inter alia: " * * * Beede's failure to copy these claims within two years from the issuance of the Chapman patent could result in no prejudice to the public, because, irrespective of this interference, his earlier application would have matured into a patent carrying claims of the same scope. * * *"

It is obvious from the history of the instant case, as heretofore given from the record, that appellant's position is different from that of Beede.

■ So far as the record before us discloses, appellant never at any time during the copendency of his application with that of Anderson had in his application any *claim* to the subject matter described in the claims before us, nor did appellant at any time within two years after the issuance of the patent to Anderson present, or seek to present, any claim covering such subject matter.

The statement in appellant's brief that "both the Examiner and the Board concede, at least by implication, that Hanna was claiming substantially the subject matter of the Anderson claims *prior* to the issuance of the Anderson patent on February 4, 1936" (italics quoted), is not justified by anything appearing in the record before us. We fail to find where either the examiner or the board made any concession directly or "by implication" that appel-

lant was "claiming substantially the subject matter of the Anderson claims" at any time prior to April 12, 1940 (even if claim 24 be regarded as covering the subject matter), more than four years after the Anderson patent issued. The examiner in fact held that the claims which appellant finally did present did not read upon appellant's disclosure. The board disagreed with that holding but found, in effect, that, while appellant's disclosure would have supported such claims, he never made any claim of the character of those here involved until at least four years after the patent had been issued to Anderson.

Appellant advances the theory that under the particular facts of this case, the Patent Office (meaning, we suppose, the examiner) should have taken the initiative in declaring an interference and that he (appellant) had no burden of initiative in this respect.

The theory is an untenable one. There was never any suggestion on the part of appellant, by way of *claim* or *claims,* during the copendency of the applications of himself and Anderson, that there was common subject matter upon which an interference was proper, and, certainly, after the patent to Anderson issued the examiner had no further responsibility concerning it. The responsibility then passed to appellant, so far as the instant controversy is concerned. If he thought that the patent to Anderson had been inadvertently issued, he could have made an issue by following the proper procedure within the time provided by the statute and rules as interpreted in the court decisions to which we have referred.

■ Appellant, it must be presumed, knew nothing of the Anderson application until after the patent based upon it was issued, but, as of course, he knew what his own disclosure was and was chargeable with knowledge of what claims he was entitled to make upon the basis of such disclosure. After the Anderson patent issued he had constructive notice of its provisions, and had the opportunity of raising the question of priority by correct and timely procedure.

It is our view that he failed to follow proper and timely procedure for the protection of whatever rights he may have had, and we agree with the position taken by the tribunals of the Patent Office.

The various decisions (other than those hereinabove named) cited in the brief of appellant and in the brief of the Solicitor

for the Patent Office are not regarded as being particularly pertinent to the facts of this case, and so we do not discuss them.

The decision of the Board of Appeals is affirmed.

Affirmed.