**Application of Wolfgang SCHAUMANN, Wolfgang Bartsch, Egon Roesch, Werner Guthlein, and Franz Braun.**

**Appeal No. 77-598.**

United States Court of Customs and Patent Appeals.

Feb. 23, 1978.

Burgess, Dinklage & Sprung, New York City, attorneys of record, for appellants; Leonard Horn, New York City, of counsel.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents; Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and ALMOND, Senior Judge.

ALMOND, Senior Judge.

This appeal is from the decision of the Patent and Trademark Office (PTO) Board of Appeals (board), one member dissenting, affirming the rejection of claims 2–4 of appellants' application serial No. 336,567, filed April 17, 1975, for "1-(3-Hydroxyphenyl)-2-Aminopropane Compounds and Chemotherapeutic Compositions." We affirm.

### The Invention

The claims on appeal are drawn to a single chemical compound, and certain pharmacologically compatible salts thereof, disclosed as being effective in increasing peripheral blood pressure in mammals without causing a significant pressure increase in pulmonary circulation or bradycardia.[1]

Claim 2 reads:

> Compound * * * designated DL-1-(3-hydroxyphenyl)-2-ethylaminopropane.[2]

Claims 3 and 4 are directed, respectively, to the hydrobromide and hydrochloride salt of DL-1-(3-hydroxyphenyl)-2-ethylaminopropane (HEP). The compound itself has the following structural formula:

$$HO-C_6H_3(\text{ring})-CH_2CHCH_3 \text{ with } N(H)(CH_2CH_3)$$

### The Prior Art

The sole reference relied upon by the examiner and the board as evidence of the

unpatentability of appellant's claims is patent No. 2,344,356, issued to G. Hildebrandt on March 14, 1944. Hildebrandt discloses a class of β-(meta-hydroxyphenyl)-isopropylamines[3] of the general formula:

$$HO-C_6H_4-CH_2-CH-CH_3 \quad (\text{with } N \text{ bearing } R, R)$$

wherein "R designates hydrogen, an alkyl radical, for example methyl, ethyl, propyl, isopropyl, butyl, isobutyl, isoamyl, etc. or a cycloalkyl radical, for example cyclohexyl, ortho-, meta- or para-methylcyclohexyl, tetrahydronaphthyl, decahydronaphthyl etc."

With respect to utility, Hildebrandt's specification states that β-(meta-hydroxyphenyl)-isopropylamines in general possess "favorable therapeutic properties" similar to β-(parahydroxyphenyl)-isopropylemethylamine,[4] which is described as physiologically active, exerting effects similar to those of ephedrine."[5]

The only compound falling within the above general formula that is exemplified by Hildebrandt is β-(meta-hydroxyphenyl)-isopropylmethylamine, which happens to be the lower adjacent homologue of HEP. Hildebrandt's specification teaches how to make β-(meta-hydroxyphenyl)-isopropylmethylamine as the free base, or as the hydrochloride salt thereof, and it also states that other β-(meta-hydroxyphenyl)-isopropylamines may be made by the same method.

---

1. Abnormal slowness of the heart beat, as evidenced by slowing of the pulse rate to 60 or less. Dorland's Illustrated Medical Dictionary 198 (23rd ed. 1957).

2. The designation DL refers to an optically inactive equimolar mixture of the dextrorotatory and levorotatory forms of the compound.

3. The difference between appellants' nomenclature and that of the reference is accounted for by the fact that appellants refer to their compound as a propane derivative and use Arabic numerals to denote substituent positions, whereas the compounds encompassed within the reference formula are termed amine derivatives, and Greek is used to specify substituent positions. It is undisputed that when one R in Hildebrandt's general formula designates hy-

drogen and the other R designates an ethyl radical, the resultant compound is HEP.

4. That compound has the formula:

$$HO-C_6H_3(\text{ring})-CH_2-CH-CH_3 \text{ with } N(H)(CH_3)$$

5. Ephedrine (1-phenyl-2-methylaminopropanol) is useful, inter alia, in the prophylaxis and treatment of hypotension (low blood pressure). The Merck Index 403 (7th ed. 1960).

Claim 1 of the Hildebrandt patent reads:

The chemical compounds β-(meta-hydroxyphenyl)-isopropylamines of the formula

$$HO-C_6H_4-CH_2-CH-CH_3$$
$$|$$
$$HN.R$$

wherein R is a lower alkyl radical.

We note in passing that appellants' application mentions the Hildebrandt patent in a discussion of the prior art, and points out that [6]

> Our investigations of [prior art compounds, including the lower adjacent homologue of HEP] have shown that, in addition to the desired increase of the blood pressure in the peripheral circulation, a considerable increase of the blood pressure in the pulmonary circulation also occurs as a clinically uncontrollable side effect or, at the same time, causes bradycardia.

According to appellants, such undesirable side effects are negligible when HEP is administered.

### Proceedings Below

Claims 2, 3, and 4 stand rejected under 35 U.S.C. § 102(b), the examiner's contention being that Hildebrandt's description of a limited class of compounds encompassing HEP is sufficient under the statute to "fully anticipate the claims in the instant [application] under the doctrine set forth in *In re Petering,* [49 CCPA 993, 301 F.2d 676,] 133 USPQ 275 [1962]."

In response to appellants' primary argument that the general formula of Hildebrandt's specification cannot constitute an anticipation of every one of the one hundred and five or more compounds encompassed thereby, the examiner noted that the method disclosed by Hildebrandt for producing β-(meta-hydroxyphenyl)-isopropylamines would result only in the production of secondary amines,[6] thus limiting to fourteen the number of possible compounds taught by the reference. That number is further reduced to seven, said the examiner, if one considers the preference for lower alkyl secondary amines expressed in claim 1 of the reference.

With respect to the affidavit of appellant Roesch, submitted under 37 CFR 1.132 to substantiate the alleged superiority (i. e., greater effectiveness in increasing peripheral blood pressure without aforementioned side effects) of HEP as compared with the lower homologue of Hildebrandt, the examiner stated that "a showing over the adjacent homolog is not sufficient to overcome the teachings of the prior art * * *."

A majority of the board affirmed the 35 U.S.C. § 102(b) rejection, noting that the structural formula of Hildebrandt's claim 1 contains but a single variable, R, defined as "a lower alkyl radical," and that the expression "alkyl radical," as set forth in the specification, includes, inter alia, ethyl.

The dissenting board member, however, voiced the following opinion:

> It is axiomatic to me that for a rejection to properly lie under 35 USC 102 a disclosure which *identically* describes the claimed invention must exist. Such is clearly now the view of the CCPA, as noted [in ?] *In re Arkley et al,* 59 CCPA 804, 455 F.2d 586, 172 USPQ 524 [1972] * * *. By having to select an ethyl radical from among the many possibilities which R in the structural formula given by Hildebrandt may be, in my view, does not give rise to the claimed compound being fully anticipated by the reference. The question is, as is emphasized by the Court [sic] even in the earlier case of *In re Ruschig et al,* 54 CCPA 1551, 379 F.2d 990, 154 USPQ 118 [1967], is the claimed compound *described* in the reference, that is does its specification convey clearly to one skilled in the art the information *that*

**6.** A secondary amine is characterized by the formula $R_1R_2NH$, and a tertiary amine by $R_1R_2R_3N$. In both cases $R_1R_2$, and $R_3$ may designate either identical or different hydrocarbon radicals or substituted hydrocarbon radicals.

Thus, the general formula of Hildebrandt's specification represents secondary as well as tertiary amines, whereas Hildebrandt's claim 1 defines secondary amines only.

*patentee invented that specific compound.* * * *

If the view of the majority were to prevail it must be said that patentee also invented 1–(3–hydroxyphenyl)–2–propylaminopropane * * *, as well as 1–(3–hydroxyphenyl)–2–isoamylamine [sic] and could have claimed these specific compounds. Such a conclusion, on its face, must manifestly be held as being contrary to existing law. [Emphasis in original.]

## OPINION

As stated by the board, the issue herein is "whether the total disclosure of the reference identifies the claimed ethylamine compound with sufficient specificity to constitute a description thereof within the purview of 35 USC 102(b)." However, a more fundamental question presented by this appeal is whether the disclosure of a chemical genus may ever constitute a description of a specific compound falling within the ambit of the genus.[7]

In essence, appellants are questioning the continued precedential value of *In re Petering*, 301 F.2d 676, 49 CCPA 993, 133 USPQ 275 (1962), wherein this court affirmed the rejection of a claim to a specific compound, 6, 7-dimethyl-9-[β-monohydroxyethyl]-isoalloxazine, not simply on the basis of the generic disclosure of isoalloxazine derivatives contained in the Karrer reference,[8] but because

the pattern of Karrer's specific preferences [for the six variable substituents on the generic formula; see n. 8, supra] in connection with his generic formula constitutes a description of a definite and limited class of compounds which may be defined with reference to the Karrer generic formula as follows: where X, P and R' are hydrogen, where Y and Z may be hydrogen or methyl, and where R is a member selected from the group consisting of -CH$_2$OH, -CH$_2$CH(OH)CH$_2$OH, -CH$_2$CH$_2$OH, -CH$_2$(CHOH)$_3$CH$_2$OH and -CH$_2$(CHOH)$_4$CH$_2$OH. [Footnote omitted.]

Id., 301 F.2d at 681, 49 CCPA at 1000, 133 USPQ at 279–80.

Since the "pattern of preferences" permitted only two alternatives for Y and Z, a limited number of variations for R, no alternatives for the other ring positions, and a large unchanging structural nucleus, it was held that Karrer described to one skilled in the art a limited class of some 20 compounds, including 6, 7-dimethyl-9-[β-monohydroxyethyl]-isoalloxazine, "as fully as if he had drawn each structural formula or had written each name." Id., 301 F.2d at 682, 49 CCPA at 1000, 133 USPQ at 280.

Appellants primarily rely on *In re Ruschig*, 343 F.2d 965, 52 CCPA 1238, 145 USPQ 274 (1965), to support their contention that *In re Petering*, supra, has been "vitiated." In *Ruschig*, two generic claims defining limited classes of benzenesulfonylureas were denied patentability on the basis of the broader generic disclosures of three references a U.S. patent to Martin et al., a French, and a Swedish patent,[9] which were alleged to have anticipated the

wherein X, Y, Z, P and R' represent either hydrogen or alkyl radicals, R a side chain containing an OH group * * *.

---

7. In their reply brief before the board, appellants asserted that "a *specific* compound is not fully met by a generic disclosure whether the genus embraces *2* or *200* compounds, not even if the genus embraces *14* compounds."

8. Karrer (patent No. 2,155,555) disclosed the following generic formula:

9. The opinion does not set forth the generic formulae disclosed in the references.

claimed subject matter. In reversing the rejection, this court said:

> We did not intend our *Petering* opinion or decision to become a precedent for the mechanistic dissection and recombination of the components of the specific illustrative compounds in every chemical reference containing them to create hindsight anticipations with the guidance of an applicant's disclosures, on the theory that such reconstructed disclosures *describe* specific compounds within the meaning of section 102. Furthermore, we do not find the present case to be of the type we had before us in *Petering*. Even if we take the 10 examples of the French or the 12 examples of the Swedish reference, take them apart and recombine them into different compounds than those named, we do not get a small recognizable class with common properties. We would apparently get from the French patent some 130 and from the Swedish some 156 compounds. And in doing this we are not dealing with such closely related units as the H and $CH_3$ and the five hydroxyalkyl components in *Petering* but with such widely differing $R^1$ choices as p-acylaminobenzene, diphenyl, β-naphthalene and dimethylbenzene, to name a few from the *thirteen* possible choices. And for the $R^3$ choices there are such diverse radicals as ethyl, dodecyl, benzyl, and β-naphthyl. We will not apply the *Petering* type of analysis to such a situation. \* \* \* We hold similar views as to the board's indication that a specific *description* of compounds within claims 1 and 2 can be made out of the Martin disclosure. To do this the board selects p-chloro- and p-fromo- for R (as used in appellants' claim 2, supra) and ethyl or isoamyl for $R_2$ to create, ex post facto, four undisclosed specific compounds out of a possible 259, according to appellants' apparently valid calculations. This is not the kind of *description* we found in *Petering* and we do not find here any "anticipation" by the Martin patent of claims 1 and 2. [Emphasis in original.]

Id., 343 F.2d at 974–75, 52 CCPA at 1250–51, 145 USPQ at 282.

We do not share appellants' view that *In re Ruschig*, supra, signaled this court's abandonment of the *ratio decidendi* of *In re Petering*, supra. That view certainly finds no express support in the language of the *Ruschig* opinion. Nor is it supported therein by implication, for the two cases are clearly distinguishable, as Judge Rich, speaking for the court in *Ruschig*, convincingly demonstrated. In any event, we believe the circumstances in the present case provide a far stronger foundation on which to support a finding of anticipation than did the circumstances in *Petering*.

In order to find anticipation in *Petering*, it was necessary to derive a class of compounds of lesser scope than the genus actually disclosed in the reference on the basis of preferences ascertainable from the remainder of the disclosure, which included eight specific examples of isoalloxazine derivatives. In the present case, by contrast, Hildebrandt's preference for lower alkyl secondary amines is expressly set forth in claim 1. In addition, the properties possessed by the specific compounds claimed in *Petering* were diametrically opposite to the properties of the compounds disclosed in the prior art of record, whereas here the blood pressure lowering effect of HEP is also shared by the class of compounds disclosed by Hildebrandt.[10]

■ When we consider also that claim 1 of the Hildebrandt patent, read in conjunction with the signification given the expression "alkyl radical" in the specification, embraces a very limited number of compounds closely related to one another in structure, we are led inevitably to the conclusion that the reference provides a description of those compounds just as surely as if they

---

10. In this respect the present case is also distinguishable from *In re Kalm*, 378 F.2d 959, 54 CCPA 1466, 154 USPQ 10 (1967), wherein the CNS depressant activity of the compounds claimed by appellant was not merely complementary or in addition to properties possessed by the compounds of the Siemer reference, but differed *toto caelo* therefrom.

were identified in the reference by name. Since one of the compounds thus described is HEP, we agree with the examiner and the majority of the board that appellants' right to a patent thereon is barred under 35 U.S.C. § 102(b).

Presumably influenced by the views of the dissenting board member, appellants assert that *In re Arkley,* 455 F.2d 586, 59 CCPA 804, 172 USPQ 524 (1972) "also supports reversal herein." It is appellants' contention that the PTO's reliance on "isolated passages of the reference," namely, claim 1 [11] and the signification given the expression "alkyl radical" in the specification, constitutes the sort of "picking and choosing" which this court held improper in *Arkley.*[12] We disagree. The examiner and the board properly interpreted claim 1 of Hildebrandt in light of the specification. Indeed, they had no alternative since claim 1 itself does not define the expression "lower alkyl radical" recited therein.

*In re Arkley,* supra, should not be interpreted as establishing a new test for determining whether an invention has been described in a reference within the meaning of 35 U.S.C. § 102. See Judge Baldwin's concurring opinion, id., 455 F.2d at 590, 59 CCPA at 810, 172 USPQ at 528. It was not this court's intention in *Arkley* to effect a change in the accepted definition of "anticipation," a term of art meaning "the disclosure in the prior art of a thing *substantially identical* with the claimed invention." [Emphasis added.] 1 A. Deller, Deller's Walker on Patents § 57 at 237 (2d ed. 1964).

Thus, although appellants would have us hold that Hildebrandt fails as an anticipation because it does not contain a description of the subject matter of the appealed claims, *ipsissimis verbis,* we cannot countenance a result which so obviously exhalts form over substance.

Finally, appellants assert, as did the dissent below, that Hildebrandt could not have claimed the specific compound HEP and, therefore, has not described it. This argument incorrectly focuses on Hildebrandt's specification alone, rather than on the reference in its entirety. The record before us rather clearly evinces the PTO's reliance on Hildebrandt's claim 1, which sets forth the substance of the invention here in controversy. No more is required of a reference under the statute. Thus, whether Hildebrandt, for any number of reasons, would have been precluded from claiming HEP, per se, as of his filing date is irrelevant.

The record shows that claims 2–4 were treated by the PTO and appellants as standing or falling together. We have treated them accordingly here. *In re Tomanek,* 376 F.2d 325, 54 CCPA 1509, 153 USPQ 451 (1967).

*AFFIRMED.*

---

11. Appellants' argument that those skilled in the art look to the patent specification rather than the claims to apprise themselves of its teachings borders on the frivolous. The principle is well established that the claims of a patent cited as a reference are part of the disclosure of that reference and may properly be considered in determining the question of anticipation. *In re Field,* 161 F.2d 372, 34 CCPA 1066, 73 USPQ 485 (1947).

12. The principal opinion in *Arkley* states:
It is to be noted that rejections under 35 USC 103 are proper where the subject matter claimed "is not *identically* disclosed or described" (emphasis ours) in "the prior art,"

indicating that rejections under 35 USC 102 are proper only when the claimed subject matter *is* identically disclosed or described in "the prior art." Thus, for the instant rejection under 35 USC 102(e) to have been proper, the Flynn reference must clearly and unequivocally disclose the claimed compound or direct those skilled in the art to the compound without *any* need for picking, choosing, and combining various disclosures not directly related *to each other by the* teachings of the cited reference. [Emphasis in original.]
Id., 455 F.2d at 587, 59 CCPA at 807, 172 USPQ at 526.