**In re Klaus SASSE, Gunther Beck and Ludwig Eue.**

**Appeal No. 80–503.**

United States Court of Customs and Patent Appeals.

July 17, 1980.

James F. Woods and Leonard Horn, New York City, attorneys of record for appellants.

Joseph F. Nakamura, Washington, D. C., for the Commissioner of Patents and Trademarks, Gerald H. Bjorge, Washington, D. C., of counsel.

Before MARKEY, Chief Judge, RICH, BALDWIN and MILLER, Associate Judges, and RE, Judge.*

RICH, Judge.

This appeal is from the decision of the United States Patent and Trademark Office (PTO) Board of Appeals (board) affirming the rejections of claims 1–13 in appellants' application serial No. 459,158, filed April 8, 1974, for "Dichlorothiazolyl Urea Compounds and Herbicidal Compositions," under 35 U.S.C. § 102(b) as being anticipated by a prior art reference and 35 U.S.C. § 135(b) as being statutorily barred by a prior art reference from which claims could have been copied. We reverse the rejection under 35 U.S.C. § 135(b). We affirm the rejection under 35 U.S.C. § 102(b).

*The Invention*

Appellants disclose that certain allegedly novel dichlorothiazolylurea (DCT urea) compounds exhibit herbicidal activity. These active compounds are stated to be particularly suitable for selectively combatting pre-emergent weeds in corn, cereals, cotton, and carrots. These compositions may be applied at a rate of between 0.1 to 15 kilograms/hectare (kg/ha) either before or after weeds appear. But as total herbicides they are supposedly effective only in the larger concentrations by means of a post–emergent application.

*References*

| Guillot et al. | 3,551,442 | Dec. 29, 1970 |
| Guillot et al. I | Reissue 27,506 | Oct. 10, 1972 |
| Bachman | 3,444,178 | May 13, 1969 |

The two Guillot patents are essentially identical, one the reissue of the other, and were treated by the board as one reference. Guillot discloses the use of 2–amino–4,5–dichloro thiazole (2–amino DCT) as a precursor for reaction with an alkyl isocyanate or a substituted carbamyl halide to produce N–2(4,5–dichlorothiazolyl) N, N'–dialkyl or N' alkyl ureas (DCT dialkyl or alykl ureas), a herbicidal compound. The following syntheses are expressly set forth:

* The Honorable Edward D. Re, Chief Judge, United States Customs Court, sitting by designation.

(I)

$$\text{(2 amino DCT)} + \text{O=C=N-alkyl} \rightarrow \text{(DCT alkyl urea)}$$

| Cl–C(=N)–...–S–... thiazole with NH₂ | + | O=C=N-alkyl | → | Cl₂-thiazole–NH–C(=O)–N(H)(alkyl) |
|---|---|---|---|---|
| (2 amino DCT) | | (alkyl isocyanate) | | (DCT alkyl urea) |

and

(II)

| 4,5-dichlorothiazol-2-amine | + | Cl–C(=O)–N(alkyl)(alkyl) | → | 4,5-dichlorothiazol-2-yl–NH–C(=O)–N(alkyl)(alkyl) |
|---|---|---|---|---|
| (2-amino DCT) | | (carbamyl halide) | | (DCT dialkyl ureas) |

No method of preparing 2–amino DCT is disclosed by either Guillot patent.

Bachman does not relate to urea compounds at all. The disclosure describes the synthesis of certain halogenated 2–(2–thiazolyl) aminofuran–5–ones. But 2–amino DCT is specifically mentioned as a suitable reactant for the production of these compounds.

*The Declaration Evidence*

During examination, one of the inventors, Sasse, twice submitted declarations to overcome the rejection by the examiner under 35 U.S.C. § 102(b). In the first declaration, he stated:

7. That based upon his own experience, 2–amino–4,5–dichlorothiazole is not obtainable from trichlorothiazole and ammonia. Rather, when trichlorothiazole and ammonia, dissolved in any ordinary solvent, such as ethanol, toluene, dioxan, tetrahydrofuran or dimethylformamide, are heated under normal pressure up to 100°C, no reaction at all occurs. When trichlorothiazole and ammonia, dissolved in, e. g., toluene or dioxan, are heated up to 150°C under pressure (of, e. g., about 10 atmospheres), only an almost black, tarry, and unidentifiable mass is formed from which no clear product can be isolated.

Furthermore, he declared that although Bachman mentions 2–amino DCT, no reference shows a method of preparing it.

In a second declaration, the necessary Guillot precursors were stated to be 2–methylamino or 2–ethylamino DCT. These compounds were alleged to be necessary to produce the alkylated DCTs which are claimed. Guillot supposedly found that all compounds of the general formula

$$\text{Cl}_2\text{-thiazole-2-X-H}$$

(X being –NCH₃–, –N–alkyl–, –S–, or –O–) were very unstable in an alkaline medium.

Thus the 2–methylamino and 2–ethylamino DCTs disclosed by Sasse were supposedly rapidly converted into a tarry mass by an alkaline medium.

### The Rejections

In his final office action and Answer, the examiner rejected appellants' claims on two statutory bases: 35 U.S.C. § 102(b)[1] because they are anticipated by a compound specifically disclosed by Guillot, and 35 U.S.C. § 135(b),[2] because they are directed to "the same subject matter as claims" of Guillot.

Appellants' response to the § 102(b) rejection was that the Guillot compound relied on was not supported by an enabling disclosure—that one of ordinary skill in the art could not make it. The examiner's response was that modifications of the general synthetic procedures in Guillot would yield the alkyl DCT ureas explicitly mentioned by the patentee and claimed by appellants. Specifically, methylamine would be substituted for ammonia in a reaction with 2,4,5–trichlorothiazole (TCT) to produce the necessary 2–methylamino DCT precursor:

(TCT)          +  $NH_2CH_3$  →          (2-methylamino DCT)

methylamine

The examiner contended that the Sasse affidavits did not affect the presumed operability of the methylamine modification, that one skilled in the art would expect the methylamine reaction to proceed even if a similar reaction with ammonia was inoperable.

On the § 135(b) rejection, the examiner said applicants' claims were for the "same subject matter" as Guillot's claims and were barred by 35 U.S.C. § 135(b) because not presented within one year of the issuance of Guillot's patent. The examiner found the *generic* claims in Guillot to "embrace" the same subject matter as appellants' species claims even though none of the patentees' species claims was directed to appellants' claimed compounds.

### Board Decision

The board noted that appellants' burden is to prove that Guillot and Bachman were not enabling disclosures, more particularly that 2–amino DCT "cannot be [sic, could not have been] produced by one of ordinary skill in the art." Ammonolysis of a halide was declared to be well known, the conditions varying according to the starting halide. Citing Wagner and Zook,[3] a new reference, heterocyclic amines were stated to be

1. A person shall be entitled to a patent unless—

      *    *    *    *    *    *

    (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of the application for patent in the United States, * * *.

2. Interferences

      *    *    *    *    *    *

    (b) A claim which is the same as, or for the same or substantially the same subject matter as, a claim for an issued patent may not be made in any application unless such a

claim is made prior to one year from the date on which the patent was granted.

3. R. Wagner and H. Zook, *Synthetic Organic Chemistry* 666 (1953), states (footnotes omitted):

Heterocyclic amines are quite often prepared by ammonolysis of the halides over a copper catalyst. The halogen atom in 9 chloroacridine is easily replaced by an amino group by heating to 120° with ammonium carbonate and phenol. Similarly, 2 chlorolepidine is converted to 2 aminolepidine (2 amino-4 methylquinoline) (78%).

generally prepared by ammonolysis of the halide over a copper catalyst.

The Sasse declarations were found to lack any factual basis for concluding that one of ordinary skill in the art could not have made the needed precursor. Without more proof that the disclosures were nonenabling, the board sustained the § 102(b) rejection.

The statutory bar of 35 U.S.C. § 135(b) was held to govern the time allowed for either "copying the patent claims," as in an interference context, or for "receiving claims which do not patentably distinguish over the claims" of the reference. *In re Hanna*, 30 CCPA 1115, 136 F.2d 749, 58 USPQ 393 (1943). The board said:

Claim 1 of Guillot et al. encompasses, includes and contains the subject matter of the claims before us. The fact that it is drawn to generic subject matter does not obviate the fact that it encompasses the same subject matter of the appealed claims. The assertion of narrower claims which are encompassed by claim 1 of the patent and disclosed therein cannot avoid estoppel. It is clear from Guillot et al. that the specific 4,5–dichloro derivatives are included in the invention described and claimed by patentees. *In re Schaumann et al.*, 572 F.2d 312, 197 USPQ 5; *In re Samour*, 571 F.2d 559, 197 USPQ 1.

Appellants concede priority of the generic invention to Guillot et al. but urge that this could not have meant concession of priority to the specifically claimed thiazole compounds. Clearly, priority of such compounds could have been determined in interference proceedings. Appellants failed to provoke an interference within the time set forth in 35 USC 135(b) and hence are estopped from obtaining claims to the same or substantially the same subject matter claimed and described by Guillot et al.

Whether or not 35 USC 135(b) is considered to be procedural or substantive in nature (*In re McKellin*, 529 F.2d 1324, 188 USPQ 428), we *do not view this section of the statute as an alternative for a rejection which is properly based under 35 U.S.C. 102.* [Emphasis ours.]

What the board meant by the last emphasized phrase, though clear on its face, nevertheless becomes obscure in the light of what it said in its opinion on reconsideration.

### On Reconsideration

In view of its reliance on the newly–cited Wagner and Zook reference in affirming the examiner's § 102(b) rejection, the board admitted that a new rejection had been made under the provisions of 37 CFR 1.196(b), which it had not mentioned. It offered appellants the options available to them under Rule 196(b). They elected to appeal here.

On the § 135(b) rejection, the board said:

To whatever extent our decision regarding the affirmance of the rejection made under 35 U.S.C. § 135(b) is ambiguous, we point out that we unequivocally stated that appellants are estopped from obtaining the claimed subject matter. 35 U.S.C. § 135 provides the statutory basis for the rejection on the basis of statutory estoppel by reason of laches. *In re Frey*, 37 CCPA 1052, 182 F.2d 184, 86 USPQ 99. Under the liberal practice of declaring an interference, an interference could have been declared if the request had been submitted within the statutory time. Appellants failed to request the declaration of an interference. Accordingly, the rejection under 35 U.S.C. § 135(b) is both proper and correct.

The request for reconsideration is granted to the extent that we have reconsidered our decision in light of appellants' arguments. Our decision is modified to the extent that our affirmance of the rejection of the claims under 35 U.S.C. § 103 [sic, the PTO concedes the board intended § 102] based upon additional art is denominated as a new rejection under 37 CFR 1.196(b). Our conclusion that the claims were properly rejected under 35 U.S.C. § 135(b) remains unaltered and no further reconsideration with respect thereto will be entertained.

## OPINION

### 35 U.S.C. § 135(b)

We set forth the judicial and legislative history of 35 U.S.C. § 135(b) at length in *Corbett v. Chisholm*, 568 F.2d 759, 196 USPQ 337 (Cust. & Pat.App.1977). Essentially, this section operates as a statute of limitations on copying claims for the purpose of instigating interferences.

█ The solicitor states, "there can be no serious doubt at this time that 35 U.S.C. § 135(b) operates to effect a kind of statutory bar, estoppel or loss of right." We agree that a *procedural* statutory bar arises proscribing the instigation of interferences after a specified interval. But we do not agree that a substantive bar is raised by § 135(b) in an *ex parte* context. The Commentary on the New Patent Act by P. J. Federico, 35 U.S.C.A. at 37–38, is in accord in stating, "The sections just mentioned, 131 to 135, deal with *procedure* in the Patent Office, of which only a small part is reflected in the statute." (Emphasis added.) This statement complements our decision in *In re McKellin*, 529 F.2d 1324, 188 USPQ 428 (Cust. & Pat.App.1976), where § 135(a) was also found to be procedural in nature.

During oral argument, the solicitor failed to show one instance in which this or any other court has approved the use of § 135(b) as a substantive ground for rejection. He, like the board, mistakenly relied on *In re Hanna*, supra, to support such a proposition. █ We have carefully reviewed the 1943 *Hanna* opinion and find nothing whatever in it to support the use of § 135(b) as a statutory ground of ex parte rejection, as distinguished from a rejection based on a reference. The case can hardly have any bearing on the interpretation of that statute which did not exist until nine and a half years after the decision. The argument ignores the context of the paragraph relied on, which is a part of the one section of the statute dealing with the declaration and deciding of *interferences* and their effects,

not the patentability of inventions. Section 135 is entitled "Interferences." (Compare the titles of §§ 101, 102, and 103.) The Revisers' Note to § 135 states that

> The second paragraph [originally unlettered, now "(b)" by amendment] is based on title 35, U.S.C., 1946 ed., § 51 (R.S. 4903, amended Aug. 5, 1939, ch. 452, § 1, 53 Stat. 1213). Changes in language are made.

R.S. 4903 was a statute dealing with the examination of applications by the Patent Office and responses thereto by applicants. Its pertinent part here was the second paragraph, effective Aug. 5, 1940, which read:

> No amendment for the first time presenting or asserting a claim which is the same as, or for substantially the same subject matter as, a claim of an issued patent may be made in any application unless such amendment is filed within one year from the date on which said patent was granted.

Referring to that paragraph, the first draft of the 1952 Patent Act[4] stated under "Chapter 5. Interferences," § 44, that the paragraph "is transposed from R.S. 4903 * * * as being more appropriate under interferences." This is obviously so, since claims which are the same as, or for substantially the same subject matter as, claims of an issued patent are presented for the purpose of provoking interference proceedings. In interferences, the parties must be claiming the same or substantially the same subject matter. The PTO has shown no such situation to exist here but seems to rely on the fact that Guillot has broad claims which would "read on" or dominate appellants' claims. Claims to a genus and claims to species within it are not claims to the same or substantially the same subject matter in the sense of § 135(b). Laying aside all the questions of time or delay, there has been no suggestion that appellants want, or could have, an interference. Section 135(b) is not applicable. The board was closer to the law when it said at

---

4. Proposed Revision and Amendment of the Patent Laws, Preliminary Draft with Notes, Committee Print, Committee on the Judiciary, House of Representatives, Jan. 10, 1950.

the end of its first opinion that "we do not view this section [§ 135d(b)] of the statute as an alternative for a rejection which is properly based under 35 U.S.C. § 102."

As for the *Hanna* case, the whole discussion in the opinion relates to whether Hanna, having copied two of the three appealed claims from Anderson's patent after a delay of at least four years after it issued, had any basis for contending that he had been claimed substantially the same subject matter within two years of its issuance, under the law then obtaining as set forth in *Chapman v. Wintroath*, 252 U.S. 126, 40 S.Ct. 234, 64 L.Ed. 491 (1920). The court held that he had no basis for so contending. The decision and opinion in *Hanna* has no bearing on the issue here.

### 35 U.S.C. § 102(b)

The second issue is whether Guillot anticipates the appealed claims. More particularly, did Guillot enable one skilled in the art at the time the invention was made to employ either the 2–methylamino or 2–amino DCT precursors in the explicitly disclosed reaction sequences which allegedly yield the claimed dialkyl and alkyl DCT ureas?

■ The requirement that a § 102(b) reference be an enabling disclosure was discussed by this court, interestingly, in a plant patent case, *In re LeGrice*, 301 F.2d 929, 49 CCPA 1124, 133 USPQ 365 (1962), but the principles are not limited to plant patents. The following excerpt continues to be the proper standard for determining whether there is enablement.

\* \* \* the proper test of a description in a publication as a bar to a patent as the clause is used in section 102(b) requires a determination of whether one skilled in the art to which the invention pertains could take the description of the invention in the printed publication and combine it with his own knowledge of the particular art and from this combination *be put in possession of the invention on which a patent is sought.* Unless this condition prevails, the description in the printed publication is inadequate as a

statutory bar to patentability under section 102(b). [Emphasis ours.]

*See In re Samour*, 571 F.2d 559, 197 USPQ 1 (Cust. & Pat.App.1978).

■ Whether those skilled in the art already possessed the necessary precursors is an issue subject to a shifting burden of proof. To explain, when the PTO cited a disclosure which expressly anticipated the present invention, i. e., Guillot, the burden was shifted to the applicant. He had to rebut the presumption of the operability of Guillot by a preponderance of the evidence. *In re Jacobs*, 50 CCPA 1316, 318 F.2d 743, 137 USPQ 888 (1963). Appellants attempted to meet that burden by demonstrating that one skilled in the art would have been unable to produce the necessary precursors. The Sasse declarations (Sasse) have been relied on to show that conventional ammonolysis of a heterocyclic halide would have been a total failure; either TCT would fail to react with ammonia, it is said, or it would yield a useless, tarry mass.

The burden of proof was once more upon the PTO to rebut the Sasse contention of non–enablement. *See In re Payne*, 606 F.2d 303, 203 USPQ 245 (Cust. & Pat.App. 1979). The board successfully did this in its new § 196(b) rejection. Wagner and Zook clearly stated that heterocyclic amines, i. e., 2–methylamino and 2–amino DCT, were "quite often" prepared in that manner.

■ In this forum, the burden again rests on appellants who continue to rely on Sasse. They argue that Wagner and Zook failed to adequately manifest how 2–amino DCT could be prepared, and, therefore, does not rebut Sasse. We disagree.

One can reasonably conclude from the unambiguous assertions in Wagner and Zook that the needed Guillot precursors were capable of being synthesized by one skilled in the art and hence were in the public's possession. It was incumbent upon appellants to rebut the presumed operability of the copper catalyst method described in Wagner and Zook. As did the board, we find the Sasse declaration devoid of any persuasive factual bases for dismissing the

proposed catalytic synthesis. Sasse does not employ any copper catalyst in the attempted preparation of the precursors. We therefore hold that Guillot, in view of the evidence in Wagner and Zook, contains an enabling disclosure of at least one compound which anticipates the present claims.

### Summary

Accordingly, the decision of the board affirming the rejection of claims 1–13 under 35 U.S.C. § 135(b) is *reversed* and the decision of the board affirming the rejection of claims 1–13 under 35 U.S.C. § 102(b) is *affirmed.*

*AFFIRMED*

